UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRACY S. SARGENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0620-CJN |
| | ) | |
| MICHAEL R. POMPEO, et al. | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Mike Pompeo, in his official capacity as Secretary, United States Department of State, through undersigned counsel, moves to dismiss Plaintiff's claims in her Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant attaches in support of his motion a memorandum of law, exhibits, and proposed order.

October 11, 2019

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

 /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW, Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br><br>TRACY S. SARGENT )<br>       )<br>    Plaintiff, )<br>       )<br>    v. )<br>       )<br>MICHAEL R. POMPEO, et al. )<br>       )<br>    Defendant, )<br>_____ ) | Civil Action No. 19-0620-CJN |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Defendant Mike Pompeo, in his official capacity as Secretary, United States Department of State ("State Department" or the "Department"), through undersigned counsel, files this memorandum in support of his Motion to Dismiss the Amended Complaint (ECF No. 14) of Plaintiff Tracy Sargent ("Plaintiff"). Plaintiff's Complaint alleges that the Department discriminated against her on the basis of sex, subjected her to a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII"). The Complaint also alleges infliction of emotional distress ("IIED") under District of Columbia common law.

This Court should dismiss Plaintiff's Title VII claims against the Department for failure to state a claim, because Plaintiff has not exhausted her administrative remedies as she did not contact an EEO Counselor in a timely manner. Even if the Plaintiff had exhausted her administrative remedies, this Court should dismiss Plaintiff's Title VII claims against the Department because Plaintiff was a contractor, not an employee of the Department. Furthermore Plaintiff's tort claim against the Department should be dismissed because Title VII provides the

exclusive remedy for her claims and, separately, the Federal Tort Claims Act ("FTCA") requires dismissal of claims for intentional infliction of emotional distress and claims for torts based on events that occurred overseas, as was the case here.

## FACTUAL BACKGROUND

For the purposes of this motion only, Defendant assumes the facts as alleged in Plaintiff's Amended Complaint.  Plaintiff is a Georgia resident, and at all relevant times contracted with SOC LLC ("SOC").  Amd. Compl. ¶¶ 7, 29 (ECF No. 14).  SOC is a commercial company that provides integrated security and critical infrastructure solutions for the U.S. Government and commercial customers, and has its headquarters in Chantilly, Virginia.  Amd. Compl. ¶ 9 (ECF No. 14).  Plaintiff alleges, and SOC admits, that Plaintiff was hired by SOC to work as a Kennel Master on a contract between SOC and the Department.  SOC Answer ¶ 29 (ECF No. 16). Plaintiff alleges, and SOC admits, that Plaintiff was employed by SOC as a Kennel Master from June 8, 2017 to October 15, 2017.  SOC Answer ¶ 7 (ECF No. 16).  Through SOC, Plaintiff received an assignment to serve as a Kennel Master under SOC's contract to provide security at the Embassy of the United States in Baghdad, Iraq (the "Baghdad Embassy Complex" or "BEC").  Amd. Compl. ¶ 1 (ECF No. 14).  This assignment included general management of canine handlers and their dogs. Amd. Compl. ¶ 33 (ECF No. 14).  Plaintiff began work at the BEC on July 12, 2017. Amd. Compl. ¶ 32 (ECF No. 14).

Plaintiff alleges that her direct supervisor during the relevant time period was fellow SOC employee Kyle Lindsey ("Lindsey"), the Operations Kennel Master.  Amd. Compl. ¶ 33 (ECF No. 14).  Plaintiff alleges that less than two weeks after she arrived at the BEC, Lindsey went on leave, and SOC "promoted" her to Operations Kennel Master, placing her in a management role over her co-workers.  Amd. Compl. ¶ 36, 37 (ECF No. 14). Plaintiff alleges that, in her

management role, she began to experience discrimination, harassment, and hostility from the male Kennel Masters who were also SOC contractors.  Amd. Compl. ¶ 37 (ECF No. 14). Plaintiff alleges that her male contract co-workers created a hostile work environment in various ways.  Amd. Compl. ¶¶ 37-43 (ECF No. 14).  The majority of Plaintiff's allegations involve SOC personnel, particularly Lindsey.  Amd. Compl. ¶¶ 37-43, 81-97, 99-105, 131-35 (ECF No. 14).

The only State Department employee whom Plaintiff names in her Complaint is Donnie Dolinger, the Government Technical Monitor responsible for making sure SOC was meeting its contract requirements.  Amd. Compl. ¶ 45 (ECF No. 14).  Plaintiff alleges that Dolinger subjected her to "aggressive and sexist behavior" that "continued throughout Sargent's time in Baghdad."  Amd. Compl. ¶ 73 (ECF No. 14). She alleges that in July 2017 he asked her if she was married and how many boyfriends she had.  Amd. Compl. ¶¶ 64-72 (ECF No. 14). She alleges that he would leer at her and invade her personal space.  Amd. Compl. ¶¶ 74-76 (ECF No. 14).  Plaintiff, who had arrived in Baghdad on July 12, 2017 (Amd. Compl. ¶ 32 (ECF No. 14)), admits that Dolinger "went on leave during or around the month of August 2017."  Amd. Compl. ¶ 77 (ECF No. 14).

Plaintiff alleges that on or around September 13, 2017, Dolinger accompanied her, a canine handler named Rich, and a veterinary technician named James in a vehicle she was driving to conduct post checks at various International Zone checkpoints.  Amd. Compl. ¶¶ 106, 109 (ECF No. 14).  Plaintiff alleges that Dolinger and Rich carried on a conversation with each other about pornography and sex during the drive.  Amd. Compl. ¶¶ 110-17 (ECF No. 14). Plaintiff alleges that, while passing local guards and when the vehicle arrived at the checkpoint,

Dolinger directed sex-related comments to her regarding the guards.  Amd. Compl. ¶¶ 119-23 (ECF No. 14).

Although Plaintiff does not refer to this fact in her Complaint, on September 14, 2017, three rockets impacted in or near the International Zone in Baghdad.  Ex. 1 (Embassy Baghdad Public Security Message).[1]  Plaintiff alleges she sent an "urgent complaint" to SOC's President and Human Resources Director, reporting the "extreme sexual harassment and discrimination she was suffering." Amd. Compl. ¶ 143 (ECF No. 14); Ex. 2 (Plaintiff's September 14, 2017 letter to SOC).[2]  While Plaintiff's Amended Complaint fails to specify the date of the "urgent complaint," her email to SOC shows she sent it on September 14, 2017, the same day as the rocket attacks. Id.  "Fearing for her safety," Plaintiff accepted SOC's offer to remove her from Baghdad, and returned to the United States on or around September 15, 2017. Amd. Compl. ¶ 144 (ECF No. 14).  Plaintiff had an employment contract with SOC.  Ex. 3 (SOC Employment Agreement, ROI

---

[1] The Department asks the Court to take judicial notice of this message to the general public available at https://iq.usembassy.gov/security-message-rocket-impacts-near-international-zone/ as an undisputed fact. Federal, state and municipal websites, including those of governmental agencies, are considered self-authenticating under Federal Rule of Evidence 902(5). Courts may also take judicial notice of "government documents available from reliable sources." Hamilton v. Paulson, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) (taking judicial notice of a document from the website of the United States Office of Personnel Management), rev'd on other grounds, Hamilton v. Geithner, 666 F.3d 1344 (D.C. Cir. 2012).

[2] Plaintiff's Amended Complaint fails to attach the "urgent complaint" she sent to SOC; however, she provided it to the Department.  The Court may consider "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  See Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 n. 2 (D.D.C. 2011). Plaintiff's "complaint" to SOC should be incorporated by reference. Plaintiff's email calls the complaint "correspondence regarding a serious HR matter," and pleads for SOC to "get me out of here ASAP with the first available flight back to the States" without mentioning any Department employee by name in her cover letter.  In the attached eleven-page "table," she includes one paragraph, "THINGS SAID," about Department employee Dolinger's alleged statements. See Ex. 2.

at 77-80).  Plaintiff does not allege that she complained to any Department employee about any discrimination or hostile work environment prior to her departure from Baghdad.

Plaintiff alleges that on October 19, 2017, SOC told her it was terminating her employment. Amd. Compl. ¶¶ 148-49 (ECF No. 14).  Plaintiff alleges that the Department issued a "loss of confidence" ("LOC") letter. Amd. Compl. ¶¶ 149, 201 (ECF No. 14).  Plaintiff alleges in her Complaint (filed on July 22, 2019) that, "As of the date of this filing, both SOC and the State Department have refused to provide [Plaintiff] with a copy of the Loss of Confidence letter."  Amd. Compl. ¶ 160 (ECF No. 14).  Plaintiff admits that the Department provided Plaintiff with a copy of the EEO Report of Investigation ("ROI") on May 30, 2019. Amd. Compl. ¶ 17 (ECF No. 14).  The ROI contained the LOC letter.  Ex. 4 (LOC letter, ROI at 97-98).[3]

Plaintiff alleges that she "made a charge or opposed a practice made unlawful by Title VII when she complained to SOC about discrimination and sexual harassment on or about September 14, 2017."  Amd. Compl. ¶ 192 (ECF No. 14) (emphasis added).  Plaintiff does not, however, allege that she engaged in any protected activity with regards to the Department prior to her departure from Baghdad or prior to issuance of the LOC letter.  Moreover, Plaintiff admits that the LOC letter was rescinded prior to her filing of this lawsuit.[4]  Amd. Compl. ¶¶ 4, 158. (ECF No. 14).

---

[3] As stated in the LOC letter, Plaintiff, while in Baghdad, took items from the room of fellow SOC employee Dexter Faulk while he was away from Baghdad on leave.  After Plaintiff left Baghdad, Faulk returned to post and discovered that items were missing from his room.

[4] The LOC letter was rescinded after it was determined later that Plaintiff likely entered Faulk's room in error, thinking it to be the room of an SOC employee who had permanently left Baghdad.

Plaintiff did not request EEO counseling from the Department until March 9, 2018, more than five months after leaving Baghdad. Ex. 5 (EEO Counselor's Report, ROI at 14).  Plaintiff admits that the Department reinstated Plaintiff's eligibility to work on April 6, 2018. Ex. 6 (Plaintiff's August 8, 2018 "written notice of tort claim" letter).  Plaintiff filed a formal EEO complaint against the Department with the Department's Office of Civil Rights on May 18, 2018. Amd. Compl. ¶ 16 (ECF No. 14); Ex. 7.  Plaintiff alleges she filed a claim pursuant to the FTCA with the Department's Office of the Legal Advisor on August 14, 2018.  Amd. Compl. ¶ 19 (ECF No. 14); Ex. 6.[5]  Under her IIED count, Plaintiff alleges that the Department engaged in "extreme and outrageous conduct" by issuing the LOC letter. Amd. Compl. ¶¶ 201-202 (ECF No. 14).

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Aktieselskabet v. Fame Jeans, Inc., 525 F.3d 8, 16-17 (D.C. Cir. 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). Under this standard, the complaint must contain "more than 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action will not do' . . .  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 566 U.S. at 678 (citing Twombly, 550 U.S. at 555, 557).  The plaintiff must therefore plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and offer "more than a sheer possibility that a defendant has acted

---

[5] Plaintiff's "written notice of tort claim" letter is dated August 8, 2018.

unlawfully." <u>Iqbal</u>, 566 U.S. at 678.  While a plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged," the Court "need not accept inferences . . . unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." <u>Lurensky v. Wellinghoff</u>, 167 F. Supp. 3d 1, 11-12 (D.D.C. 2016) (citation omitted).

When ruling on a motion under Rule 12(b)(6), the Court may consider "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." <u>See Ward v. D.C. Dep't of Youth Rehab. Servs.</u>, 768 F. Supp. 2d 117, 119 n. 2 (D.D.C. 2011) (declining to convert motion to dismiss to summary judgment) (internal quotations and citations omitted).  "'[W]here a document is referred to in the complaint or is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'" <u>Vanover v. Hantman</u>, 77 F. Supp. 2d 91, 98 (D. D.C. 1999), <u>aff'd</u>, 38 F. App'x 4 (D.C. Cir. 2002).  "Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint.  Otherwise, 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" <u>Alston v. Johnson</u>, 208 F. Supp. 3d 293, 298 (D.D.C. 2016).

## <u>ARGUMENT</u>

The Department asserts that this motion can be decided under Rule 12(b)(6), based on the facts as alleged in the Amended Complaint, incorporated by reference in the Complaint, or otherwise legally available to the Court.  <u>See Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197

(D.C. Cir. 1992); <u>Vasser v. Dep't of Veterans Affairs</u>, 228 F. Supp. 3d 1, 9-11 (D.D.C. 2016)

(analyzing cases, concluding there is no dispute that a federal court may consider the

administrative complaint and notice of charge without converting a motion to dismiss to one for

summary judgment).

I.      **Plaintiff's Title VII Claims Should be Dismissed for Failure to Exhaust Administrative Remedies.**

        The Department moves to dismiss Plaintiff's Title VII claims on the ground that Plaintiff

failed to exhaust her administrative remedies by failing to contact an EEO Counselor within 45

days of the alleged discrimination or retaliation.  Pursuant to 29 C.F.R. § 1614.105(a)(1),

"persons who believe they have been discriminated against on the basis of race, color, religion,

sex, national origin, age or handicap . . . must initiate contact with a[n EEO] Counselor within 45

days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).

"Generally, exhaustion of administrative remedies is a prerequisite to relief under Title VII and

the Rehabilitation Act."  <u>Aceto v. England</u>, 328 F. Supp. 2d 1, 7 (D.D.C. 2004) (granting

summary judgment for government where employee failed to report any of employer's alleged

discriminatory acts to an EEO counselor within 45 days of act).

        The procedural requirements governing a plaintiff's right to bring a Title VII claim in

court are not mere technicalities. "[I]t is part and parcel of the Congressional design to vest in the

federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility'

for maintaining nondiscrimination in employment."  <u>Hines v. Bair</u>, 594 F. Supp. 2d 17, 23

(D.D.C. 2009) (granting summary judgment where plaintiff first contacted an EEO counselor 56

days after the alleged retaliatory event).  "In other words, EEO procedures are time-barred if the

plaintiff knew, or should have known, about the alleged discriminatory action 45 days prior to

his filing" the EEOC charge.  <u>Aceto</u>, 328 F. Supp. 2d at 7.  Accordingly, a Rule "12(b)(6) motion

to dismiss for failure to state a claim upon which relief can be granted is the appropriate vehicle to challenge an alleged failure to exhaust administrative remedies under Title VII." Blue v. Jackson, 860 F. Supp. 2d 67, 72 (D.D.C. 2012) (internal citation and quotation marks omitted).

Not only has the EEOC been consistent about the timing requirements set in 29 C.F.R. § 1614.105(a)(1), but the Courts have consistently called for the need to abide by the timeliness rules. "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).

Although Plaintiff makes the conclusory assertion that she filed a "timely" formal complaint of discrimination, retaliation, and hostile work environment against the Department with the Department's Equal Employment Office on May 18, 2018, see Amd. Compl. ¶ 16 (ECF No. 14), it is telling that Plaintiff failed to allege the date when she contacted a Department EEO Counselor. Plaintiff's time for filing an EEOC charge started to run when she had a reasonable suspicion that she had been the victim of discrimination or harassment. Aceto, 328 F. Supp. 2d at 7; see also McCants v. Glickman, 180 F. Supp. 2d 35, 40 (D.D.C. 2001). Plaintiff alleges that Department employee Dolinger subjected her to "severe sexual harassment on a post check" on September 13, 2017. Amd. Compl. ¶¶ 119-123 (ECF No. 14). Thus, Plaintiff's opportunity to make a timely request for EEO counseling with the Department ran from September 13, 2017, and expired 45 days later, on October 30, 2017 (October 28, 2017, was a Saturday). The undisputed facts show that Plaintiff did not contact an EEO counselor at the Department until March 9, 2018. Ex. 6 (EEO Counselor's report). Therefore, Plaintiff contacted an EEO Counselor 130 days too late to make a claim of sexual harassment or hostile work environment, as any exposure to any Department employees ended when she left Baghdad.

Even counting from the later date of October 19, 2017 – the day Plaintiff's employment with SOC was terminated by SOC – the  45-day period for Plaintiff to contact an EEO Counselor expired on December 4, 2017 (December 3, 2017, was a Sunday).  She contacted an EEO Counselor 95 days too late to make a claim against the Department based on her termination. Dismissal results when a plaintiff fails to exhaust administrative remedies. See Johnson v. Gonzales, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (employee failed to timely exhaust his administrative remedies, warranting dismissal); accord Burkes v. Holder, 953 F. Supp. 2d 167 (D.D.C. 2013) (dismissing for failure to contact EEO Counselor within 45 days even where employee alleged he had complained earlier to Office of Inspector General).

It does not appear that Plaintiff makes any claim at equitable tolling regarding the 45-day deadline, but even if she tries, her Amended Complaint does not support it.  "'Equitable tolling' is not some free floating doctrine allowing the courts to override the will of Congress."  Maggio v. Wisc. Ave. Psychiatric Ctr., Inc., 795 F.3d 57, 60 (D.C. Cir. 2015) (granting former employer's motion for dismissal or summary judgment where employee, who failed to update his address with the EEOC, brought discrimination claim too late).  In Dyson v. District of Columbia, 710 F.3d 415 (D.C. Cir. 2013), the D.C. Circuit upheld dismissal of a Title VII sexual harassment complaint where the employee had not filed a timely charge and failed to meet the requirements for equitable tolling, holding "[s]he neither pursued her rights diligently nor proved that some extraordinary circumstance prevented her from satisfying the statute of limitations." See also Niskey v. Kelly, 859 F.3d 1 (D.C. Cir. 2017) (lengthy and unexplained delay in filing formal complaint "does not evidence the diligent pursuit of Title VII rights that is required for equitable tolling"); Drielak v. McCarthy, 209 F. Supp. 3d 230 (D.D.C. 2016), aff'd, Drielak v. Pruitt, 890 F.3d 297 (D.C. Cir. 2018) (equitable tolling did not apply to former employee's

ADEA claims for which he failed to comply with 45-day exhaustion deadline); <u>Latson v.</u>

<u>Sessions</u>, 256 F. Supp. 3d 36, 44 (D.D.C. 2017) (employee did not establish extraordinary

circumstances that would justify equitable tolling of the statute of limitations on her Title VII

claims); <u>Horsey v. U.S. Dep't of State</u>, 170 F. Supp. 3d 256 (D.D.C. 2016) (where pro se

plaintiff had cited terminal illness of his father, equitable tolling was not warranted of the 45-day

period for employee to contact an EEO counselor).  In short, the EEO rules clearly establish the

timeline for contacting the Department for an EEO Counselor so that a government agency may

address matters internally and not overburden the court system. Plaintiff failed to timely exhaust

her administrative remedies, and accordingly this Court should grant the Department's motion to

dismiss her Title VII claims.

## II.    Plaintiff May Not Sue the Department Because She was a Contractor and Not an Employee of the Department.

Title VII "cover[s] only those individuals in a direct employment relationship with a

government employer.  "Status as an <u>employee</u> is . . . of crucial significance for those seeking to

redress alleged discriminatory actions in federal employment."  <u>Spirides v. Reinhardt</u>, 613 F.2d

826, 829-30 (D.C. Cir. 1979) (emphasis added). In <u>Palmer v. Napolitano</u>, 867 F. Supp. 2d 120,

123 (D.D.C. 2012), the D.C. Circuit applied <u>Spirides,</u> holding that a contractor removed from a

Customs and Border Protection project did not qualify as a federal employee and thus could not

sue the Department of Homeland Security for discrimination, stating "her beef lies with

BaseTech, not CBP."  Similarly, here, Plaintiff's beef lies with SOC, not the Department of

State.  <u>See also</u> <u>Al-Saffy v. Vilsack</u>, 827 F.3d 85, 96 (D.C. Cir. 2016) (citing <u>Spirides</u>).

### A.    Plaintiff Admits That She Was a Contractor.

Plaintiff's Amended Complaint refers to herself and her co-workers as "contractors"

employed by SOC.  <u>See, e.g.</u>, Amd. Compl. ¶¶ Intro, 7, 8, 25 (ECF No.14); Ex. 7 (EEO Formal

Complaint, ROI at 1-12) at Box 10 (Plaintiff self-identifies as a "Contractor" and not as an "Employee") and Box 12 (Plaintiff identifies her "Current Employer" as "SOC"). Plaintiff attached her Employment Agreement with SOC to her EEO Affidavit. Ex. 4 (SOC Employment Agreement, ROI at 77-80). The Agreement, signed by Plaintiff on September 7, 2016, is clearly between SOC and Plaintiff, stating that Plaintiff is an "At-Will" employee who is a "WPS Program Trainee" of SOC. Id. Where a plaintiff simply admits independent contractor status, this concludes the inquiry into whether she is an employee for the purposes of Title VII's protections. See, e.g., Palmer, 867 F. Supp. 2d at 123 ("Given that Plaintiff asserts that she was a contractor and does not claim to have been an employee in either law or fact, that is the end of the matter."); Konah v. District of Columbia, 815 F. Supp. 2d 61, 70 (D.D.C. 2011) (dismissing claim upon finding that complaint did not allege that plaintiff was an employee, or "put forth any facts that might allow the court to conclude that the District was an employer under [relevant precedent]").

Plaintiff's bare assertions that she was employed by "Defendants" (Amd. Compl. ¶¶ 7, 32 (ECF No.14)) amount to an unsupported legal conclusion that the Court is not bound to accept as if it were a factual assertion, under the pleading standards as described by Twombly and Iqbal. The Court should dismiss Counts I, II, and III against the Department based on Plaintiff's admission that she was a contractor and not an employee of the Department.

**B.  The Alleged Facts Establish that Plaintiff Was a Contractor.**

Even if Plaintiff had not conceded that she is a contractor, the facts she alleged in the Amended Complaint clearly establish her status as a contractor, not an employee of the Department, but instead and employee of SOC. As the D.C. Circuit recently explained:

> We have recognized two largely overlapping articulations of the test for identifying joint-employer status. See Redd, 232 F.3d at 938–939. The first, taken from Spirides v.

Reinhardt, speaks in terms of the "'economic realities' of the work relationship," emphasizing whether the "employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." 613 F.2d at 831–832.  A second articulation borrows language from NLRB v. Browning-Ferris Industries of Pennsylvania, 691 F.2d 1117 (3d Cir. 1982), asking whether the employer, "while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer," id. at 1123.  See Redd, 232 F.3d at 938.  As their language indicates, in both cases the touchstone is control.

Al-Saffy v. Vilsack, 827 F.3d 85, 96-97 (D.C. Cir. 2015).  Spirides identified eleven factors that

a Court should weigh when evaluating whether an individual is an employee or independent

contractor:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" . . .  furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Spirides, 613 F.2d at 832.  Under Spirides, the most important factor to consider is "the extent of

the employer's right to control the 'means and manner' of the worker's performance."  Spirides,

613 F.2d at 831.

When evaluating this factor, the Court looks to whether the alleged employer has "the

right to control and direct the work of the individual, not only as to the result to be achieved, but

also as to the details by which that result is achieved."  Spirides, 613 F.2d at 831-32 (citing

Lodge 1858 v. Webb, 580 F.2d 496, 504 (1978) and Restatement (Second) of Agency s 222(2)

(1957)).  Plaintiff's allegations reflect that SOC– not the Department – had control and the

ability to direct her work because the supervisor to whom she reported on a daily basis during the

relevant time period was an SOC employee, Kyle Lindsey; this point is reiterated throughout the

Amended Complaint.  *See* Amd. Compl. ¶ 33 ("her direct supervisor was Kyle Lindsey"), ¶ 43

("At one point, [Plaintiff]'s direct supervisor, Lindsey, ordered [Plaintiff] to conduct her post

checks alone"), ¶ 69 ("[Plaintiff] looked pointedly at her supervisors Lindsey and Cotton"), ¶ 90

("Lindsey ordered [Plaintiff] … to 'stay put'"), ¶ 99 ("Lindsey ordered [Plaintiff] to report to his

office"), ¶ 131 ("Lindsey called a meeting of the Kennel Masters"), ¶ 178 ("Lindsey used his

position of power as [Plaintiff]'s supervisor to push her to give in" and "Lindsey directed

[Plaintiff]"), ¶ 183 ("Lindsey used his position of power as [Plaintiff]'s supervisor to force her to

sit idly") (ECF No. 14).

   The fact that SOC – not the Department – held control over the day-to-day actions, work

environment, and the details of the work performed is also indicated by the fact that, when

Plaintiff felt it was necessary to lodge a complaint about how she felt about conditions at her job,

she "drafted and sent an urgent complaint to SOC's President and Human Resources Director;"

she did not contact the Department.  Amd. Compl. ¶ 143 (ECF No. 14).  Plaintiff amended her

original Complaint, apparently in an attempt to construct an argument of "joint employment,"

highlighting various tasks she allegedly performed from time to time at Dolinger's direction.

Amd. Compl. ¶¶ 47-60 (ECF No. 14).  Yet, Plaintiff admits that Dolinger's role as the

Government Technical Monitor was to make sure SOC was meeting its contract requirements.

Amd. Compl. ¶ 45 (ECF No. 14). Thus, Plaintiff's own understanding was that SOC was her

employer and exercised control over the details and conditions of her work.   Based on Plaintiff's

allegations in the Amended Complaint, the control concept inescapably points to finding that

Plaintiff was a contractor for a commercial company and not an "employee" of the Department.

The result is the same when looking at the Spirides factors in detail.  The first, second, third, fourth, fifth, sixth, eighth, and eleventh Spirides factors – i.e., the type of occupation, whether the work is typically performed under the direction of a supervisor or by a specialist without supervision, the skill required by the occupation, whether the "employer" furnishes the equipment used, the length of time during which the individual has worked, the method of payment, the manner in which the work relationship is terminated, whether the job is an integral part of the alleged employer's work, and the intention of the parties – all weigh in favor of finding that Plaintiff was a contractor, not an employee. Plaintiff alleges she is a "K-9 specialist" and was recruited by SOC to serve as a "Kennel Master."  Amd. Compl. ¶¶ 29, 30 (ECF No. 14). Plaintiff alleges that SOC promoted her to Operations Kennel Master.  Amd. Compl. ¶ 36 (ECF No. 14). This is clearly a very specialized skill.  See Buyze v. Holder, No. 07-1191, 2009 WL 10704337, at *3 (N.D. Tex. Aug. 26, 2009) (translator was a "highly skilled occupation" which supports that she was an independent contractor and not an employee).  For the third factor, it seems evident that the contract company SOC provided both the canine handlers and the dogs, the necessary "equipment" for the job.  Amd. Compl. ¶ 33 (ECF No. 14).

The length of time during which Plaintiff worked (the fourth factor) was relatively brief; she worked for SOC from "approximately June of 2017 to on or about October 16, 2017," Amd. Compl. ¶ 7 (ECF No. 14), but was in Baghdad only from July 12, 2017, to September 15, 2017. Amd. Compl. ¶¶ 7, 32 (ECF No. 14).  For the sixth factor, Plaintiff's Employment Agreement with SOC stated that she would be paid a "reasonable wage" on a "bi-weekly basis in accordance with the Company's standard payroll practices."  Ex. 3.  For the sixth factor, the manner in which the relationship is terminated, it was SOC which terminated Plaintiff.  Amd. Compl. ¶¶ 149, 193 (ECF No. 14).

For the eighth factor, working with canines is not the type of work that constitutes a core or integral Department function.  As for the intention of the parties, the Employment Agreement memorializes the mutual understanding that the employment relationship was between Plaintiff and SOC.  Ex. 3.  Furthermore, the Plaintiff alleges that SOC (and not to the Department) promoted and then demoted her, that she complained to SOC (and not to the Department) about her work environment, that she asked SOC (and not the Department) to remove her from Baghdad, and that she followed up with SOC (and not the Department) on SOC's alleged promise to investigate her "urgent complaint."

All these allegations suggest that even Plaintiff considered herself to be an employee of SOC, the commercial company, and not an employee of the Department.  Amd. Compl. ¶¶ 143-47, 170, 172 (ECF No. 14). The fact that the Department issued the LOC letter to SOC and not directly to Plaintiff confirms the Department's understanding and intention that SOC was Plaintiff's sole employer.  Amd. Compl. ¶ 149 (ECF No. 14).  Indeed, Plaintiff fails to allege that she contacted any Department employee at Embassy Baghdad or in Washington, D.C., to complain about Dolinger at any time prior to her termination by SOC.Based on Plaintiff's own admissions and the Employment Agreement submitted with her Affidavit, she is not an employee of the Department; thus, her Title VII claims against the Department must be dismissed.  See also Palmer, 867 F. Supp. 2d 120, 123 (D.D.C. 2012); see also Mason v. African Dev. Found., 355 F. Supp. 2d 85, 98 (D.D.C. 2004) (applying Spirides and holding that plaintiff's non-receipt of retirement benefits and health insurance from federal agency were important factors weighing against employment relationship; dismissing for lack of subject-matter jurisdiction); Redd v. Summers, 232 F.3d 933, 940 (D.C. Cir. 2000) (client's command to remove a specific worker,

say, on grounds of rudeness or just personal incompatibility, would hardly render the worker an employee of the client).

In sum, Plaintiff fails to plausibly state she was an "employee" of the Department and her Title VII claims against the Department should be dismissed for that reason.

## III.   Plaintiff's Tort Claim Must be Dismissed.

### A.   Title VII is Exclusive Remedy for Workplace Discrimination.

Count IV of the Amended Complaint alleges intentional infliction of emotional distress under District of Columbia common law, specifically that Defendants, "with malicious purpose and wanton disregard of [Plaintiff]'s emotions, issued or caused to be issued a Loss of Confidence letter to [Plaintiff] – effectively ending her career as a U.S. Government contractor – in retaliation for [Plaintiff]'s protected complaints of severe sexual harassment," and that this conduct caused Plaintiff severe emotional distress.  Amd. Compl. ¶¶ 185, 186 (ECF No. 14). Plaintiff's tort claims are subject to dismissal because Title VII provides the exclusive remedy for claims of workplace discrimination and retaliation.  See generally Brown v. General Services Administration, 425 U.S. 820, 828-29 (1976).  See also Coulibaly v. Kerry, 213 F. Supp. 3d 93, 131-32 (D.D.C. 2016) (citing Brown v. GSA); accord  Chennareddy v. Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991) ("It is undisputed that the ADEA provides the exclusive remedy for a federal employee who claims age discrimination."); Gergick v. Austin, 997 F.2d 1237, 1239 (8th Cir. 1993) (dismissing tort claims because Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment).

### B.   FTCA Bars Plaintiff's Tort Claims.

In the alternative, even if Plaintiff could bring a tort claim, it would be subject to dismissal under the Federal Tort Claims Act for either or both of two separate, independent

reasons.  First, her IIED claim is essentially a claim for tortious interference with contract, which

is explicitly barred under the FTCA.  Section 2680(h) of the FTCA excludes from the United

States' waiver of sovereign immunity any claim arising out of libel, slander, misrepresentation,

deceit, or interference with contract rights.  28 U.S.C. §2680(h).  This exclusion bars not only

claims arising from interference with existing contract rights, but claims for interference with

prospective contracts and for interference with prospective economic advantage, as well as suits

for damages for lost business opportunities.  "Courts in this Circuit have not been reluctant to

dismiss claims pursuant to the FTCA's contract exception," and the contract exception has been

"fairly broadly construed by courts in this Circuit."  Appleton v. United States, 69 F. Supp. 2d

83, 86-87 (D.D.C. 1999).  A claim for interference with prospective employment opportunities

would fall within the "interference with contract rights" exception.  See, e.g., Vanover v.

Hantman, 77 F. Supp. 2d 91, 98-99 (D.D.C. 1999) (holding claim by cleaner in Senate against

supervisor, alleging tortious interference with employment relationship, barred by interference

with contract rights exception); Maibie v. United States, No. 07-0858, 2008 WL 4488982 at *3

(N.D. Tex. Oct. 7, 2008) (claims for interference with employment contract and employment

relationship by plaintiff's supervisor at USPS barred by interference with contract rights

exception).

      Here, Plaintiff alleges that the Department, in issuing the LOC letter, interfered with

Plaintiff's employment contract with SOC and her ability to secure future employment as a

contractor for the United States Government, causing damages.  The Court should view this

claim for its substance (tortious interference), rather than the title Plaintiff attaches to it (IIED).

See, e.g., United States v. Neustadt, 366 U.S. 696, 704 (1961) (looking beyond the claim to

whether the essence of the complaint involved the government's failure to use due care in

communicating information, in which case negligence claim would be barred by section 2680(h) misrepresentation exception, regardless of plaintiff's characterization of claim as one for negligence).

Although Plaintiff has styled her claim as an IIED claim, the alleged facts show that it in fact arises out of the Department's alleged interference with her contract rights as an employee of SOC.  In determining whether an action arises out of the provisions of excepted conduct found in §2680(h) "[t]he Court must examine the actual conduct upon which plaintiff [ ] bases his claim for intentional infliction of emotional distress. . . If the alleged conduct constitutes a tort listed in § 2680, then this Court has no jurisdiction to hear the claim of intentional infliction of emotional distress."  Koch v. United States, 209 F. Supp. 2d 89, 94 (D.D.C. 2002), aff'd, 2002 WL 31926832 (D.C. Cir. 2002).  Plaintiff's claim falls squarely within the exception that grants the United States sovereign immunity.  In bringing a suit on the grounds of IIED, Plaintiff attempts to fit the termination of her employment contract with SOC, allegedly due to the Department's actions, into a category not barred by the exceptions to the FTCA.  Simply framing the matter as an IIED does not bypass the United States' enumerated sovereign immunity.

Elsewhere in her Complaint, Plaintiff alleges that since she left Baghdad, her former male co-workers "have traded stories" that she "couldn't take it,"[6] and that "Defendants' conduct has irreversibly damaged [Plaintiff]'s career and caused her severe emotional distress." Amd. Compl. 161-62.  To the extent that Plaintiff's IIED claim may relate to reputational harm, it would arise out of the excepted conduct found in §2680(h) of libel, slander, misrepresentation, or deceit. Borawski v. Henderson, 265 F. Supp. 2d 475, 484 (D.N.J.2003) (dismissed IIED claim because

---

[6] Plaintiff does not define "it," which most likely refers to the dangerous security situation in Baghdad and the attack on the International Zone where the BEC was located.

claim stemmed from claims of defamation and slander, and the court lacked subject matter jurisdiction on all of the related claims). For all of these reasons, the Court lacks jurisdiction and should dismiss Plaintiff's IIED claim.

Second, claims "arising in a foreign country" are excluded from the Government's waiver of sovereign immunity under the FTCA.  28 U.S.C. § 2680(k).  Accordingly, the United States cannot be subjected to liability under the FTCA for a tort claim based on an act or omission by an employee of the United States, where the actions giving rise to the claim occurred in a foreign country.  Smith v. United States, 507 U.S. 197, 204 (1993).  Plaintiff's IIED claim should be barred by the foreign country exception, as the proximate cause of the alleged harm occurred overseas:  The Department employee who issued the LOC letter, Assistant Regional Security Officer ("ARSO") Buford Pate, was posted in Baghdad at the time.  The underlying events precipitating the issuance of the letter – Plaintiff's removal of property and the subsequent discovery and report that property was missing -- occurred in Baghdad. Ex. 4. When ARSO Pate received the information about the alleged theft by Plaintiff, and when he issued the LOC letter, he was in Baghdad.  Mancharia, 334 F.3d at 69 (noting ARSOs are located overseas and "the FTCA's sovereign immunity waiver does not extend to acts or omissions arising in territory subject to the sovereign authority of another nation"); Akutowicz, 859 F.2d at 1125 (the government's waiver under the FTCA must be strictly construed in favor of the government).

## **CONCLUSION**

For the foregoing reasons, the Department respectfully requests dismissal of the

Plaintiff's Amended Complaint against the State Department in its entirety with prejudice.

October 11, 2019                    Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

 /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW, Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendant*