UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRACY S. SARGENT )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL R. POMPEO, et al. )<br>)<br>   Defendant, )<br>) | Civil Action No. 19-0620-CJN |

### **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant, Mike Pompeo, Secretary, United States Department of State, through undersigned counsel, respectfully submits this Reply in support of his motion to dismiss Plaintiff's claims in her Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's employment claims should be dismissed for either of two independent reasons: she failed to exhaust her administrative remedies and/or she was employed by a government contractor, not by the Department of State. Her tort claim of intentional infliction of emotional distress should be dismissed as it is either pre-empted by Title VII or barred by exceptions to the Federal Tort Claims Act ("FTCA"). Plaintiff's Opposition (ECF No. 24) raises no arguments that prevent the Court from granting Defendant's Motion to Dismiss (ECF No. 22).

**I.      Plaintiff Failed to Exhaust Administrative Remedies.**

     **A.      Plaintiff Offers No "Extraordinary Circumstances" for Missing Deadlines.**

The Court should reject Plaintiff's weak attempts to rebut Defendant's argument that Plaintiff's contact with an EEO Counselor, more than five months after her alleged "severe harassment" on September 13, 2017, was untimely. An examination of the timeline reveals that Plaintiff alleges that her employer, SOC, promised on September 18, 2017, to notify the State

Department of her allegations.  See Opp. at 8 and Ex. A thereto.  However, Plaintiff also states that on October 23, 2017, she learned that SOC had not notified State, and communicated to SOC's HR Director Bonnae Vega, "I told her that if I had known I had to file a complaint directly to the State Department I would have done it right away."  Id.  Yet on that day, already forty days after the alleged harassment, Plaintiff failed to act.  Contrary to her statement that "had I known … I would have done it right away," Plaintiff waited an additional twenty-five days (now sixty-five days past the alleged severe harassment), conceding that she finally contacted the Office of Inspector General ("OIG") on November 16, 2017.  Id.

Plaintiff has not and cannot plausibly allege that the State Department actively misled her or engaged in "misconduct" or "trickery" (Opp. at 8) because Plaintiff admits she had no contact whatsoever with the State Department regarding her Title VII allegations until she contacted the OIG sixty-five days after the alleged harassment:

> State was first given actual notice of Sargent's grievance via her complaint to OIG on November 16, 2017, a mere sixty-five (65) days after Sargent was subjected to severe sexual harassment by Dolinger.

Opp. at 12.[1]  In a footnote, Plaintiff asserts:

> Of course, State would have been given notice of Sargent's grievance *less than a week after the incident* with Dolinger, had SOC not failed to follow through on its promise to notify State of Dolinger's conduct.

Opp. at 12 n.5 (italics in original).  Yet Plaintiff completely failed to contact any part of the State Department "less than a week" after learning that SOC had not notified State; instead, she waited

---

[1] Notably, Plaintiff's First Amended Complaint ("Amd. Compl.") (ECF No. 14) makes no mention of the Department "actively misleading" her.  It is axiomatic that pleadings may not be amended by statements in opposition to a motion to dismiss. Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003)

more than three weeks. Plaintiff pleaded no actions by the State Department that plausibly "lulled Plaintiff into inaction," Opp. at 10, during that additional period.

Plaintiff offers no extraordinary circumstances and alleges nothing beyond her control to show that despite due diligence she was prevented from making contact with State within the time limits. In sum, Plaintiff has presented no equitable reason to excuse her failure to exhaust her administrative remedies for her Title VII claims.

Moreover, even if Plaintiff had contacted the OIG within forty-five days of the harassment, which she did not, EEOC Regulation 29 C.F.R. § 1614.105(a)(1) requires that complaints of discrimination should be brought to the attention of the EEO Counselor within forty-five (45) days. The Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, recently emphasized in a case where a Complainant had missed the forty-five-day counseling deadline that other processes do not toll the running of the time limit to contact an EEO counselor. Bret B. v. Dep't of Veterans Affairs, EEOC Appeal No. 2019000247, 2018 WL 6599636 (Nov. 28, 2018) (complainant explained that he initially contacted the Office of Inspector General, which referred him to the Office of Special Counsel, which, according to Complainant, investigated the matter for several months before he was referred to the EEO process; the Commission affirmed the Agency's dismissal of the complaint for untimely EEO Counselor contact).

Furthermore, even if the Department had given erroneous advice, which it did not, Plaintiff cannot "avoid the exhaustion requirement on the ground that [government] officials erroneously advised the plaintiff. See Rahimi v. Weinstein, 271 F. Supp. 3d 98, 104 (D.D.C. 2017) (declining to excuse plaintiff's failure timely to exhaust certain discrimination claims based on erroneous advice she claimed to have been given by Human Resources Department);

see also Tapp v. Wash. Metro. Area Transit Auth., 283 F. Supp. 3d 1, 7 (D.D.C. 2017); Hall v. Dep't of Commerce, No. 16-1619 (EGS), 2018 WL 2002483 at *4 (D.D.C. Apr. 30, 2018) (failure to initiate contact with the USPTO's EEO office within 45 days cannot be excused); O'Neal v. England, No. 03-5261, 2004 WL 758965 at *1 (D.C. Cir. Apr. 7, 2004).  For these reasons, the Court should reject Plaintiff's attempt to claim equitable tolling and should instead find that she failed to exhaust her administrative remedies.

      **B.     Defendant Did Not Waive its Defense of Untimeliness by Accepting Plaintiff's Complaint for Investigation.**

Plaintiff argues that State waived the defense of untimely exhaustion by failing to raise it in the administrative process.  However, Plaintiff glossed over the important fact that Plaintiff elected to opt out of the administrative adjudication of her EEO complaint by filing this action in federal court.  Therefore the State Department ceased all processing of her case and the merits of the case were not adjudicated either by the EEOC or by the Department through a Final Agency Decision.  This is confirmed by the May 30, 2019, letter that Plaintiff quotes in her Amended Complaint (ECF No. 14 ¶ 17), a full copy of which is attached hereto as Ex. 1.  That letter explained: "Because [Plaintiff] has elected to opt out of the administrative adjudication of her EEO complaint, we have ceased all processing of her case, including her request for a Final Agency Decision."  Accord Amd. Compl. (ECF No. 14 ¶ 17) ("Upon Sargent's request, the EEO notified Sargent on May 30, 2019 that it was closing her case and provided Sargent with a copy of the report of investigation").  Plaintiff's opposition brief acknowledges:

> Although agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, courts have suggested that if they not only accept and investigate a complaint, but also decide it on the merits—all without mentioning timeliness—their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit.

Opp. at 11 (emphasis added).

The informal email exchange between the EEO Counselor and Plaintiff and her counsel which Plaintiff has attached to her Opposition (at 11, citing Ex. C) clearly does not constitute raising and waiving a timeliness defense in a decision on the merits.  The fact that S/OCR accepted the complaint for investigation is not a waiver of the defense of untimeliness, as Plaintiff herself has pointed out.  In many cases, an investigation is necessary to make a final determination on timeliness issues.   Plaintiff in effect is arguing that because the Department initially accepted her complaint for investigation and provided her an opportunity to prove that her complaint was timely (which it was not), that the initial acceptance functioned as a decision on the merits of the case.

It is indisputable that the merits of the case were never reached because Plaintiff opted out of the administrative process.  An agency will not be deemed to have waived its objections to a complainant's failure to comply with the time limitations by accepting and investigating a complaint.  Bell v. Donley, 724 F. Supp. 2d 1 (D.D.C. 2010) (Secretary of Air Force did not waive timeliness defense by accepting claims for investigation at the administrative level).  In Bell, even though the agency accepted Bell's complaint, the Court found that the defense had not been waived because the defendant did not issue a final decision on the merits of those claims; the Court dismissed Bell's claims for a failure to initiate contact with the EEO within the 45–day limitations period.  724 F. Supp. 2d 1 at 10.

## II.     Plaintiff was Not a State Department Employee.

In Palmer v. Napolitano, 867 F. Supp. 2d 120 (D.D.C. 2012), the Court granted the motion of defendant DHS to dismiss the case under Rule 12(b)(6) for failure to state a claim, holding that the plaintiff, a contractor, did not qualify as an employee of the federal government.  Although the plaintiff in Palmer had admitted that she was a contractor, the Court further opined:

5

> Even if she had made the argument that the Court should treat her as an employee here, she would still not prevail. If she had so contended, the Court—using her own pleadings and incorporated documents—would then determine whether Plaintiff was an employee or independent contractor for purposes of Title VII.

The Court then applied the tests in Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C. Cir. 1979), and Redd v. Summers, 232 F.3d 933 (D.C. Cir. 2000), considering the contract incorporated into the complaint and the intent of the parties as manifested by the language in the contract.

Here, the same dual holdings are just as appropriate: Plaintiff has repeatedly admitted that she was a contract employee, not an employee of the State Department, and that should resolve the question. Even if it did not, however, then like the employee in Palmer, the facts Plaintiff has pleaded in her complaint, when viewed through the Spirides factors and seen in the light most favorable to Plaintiff, demonstrate that she was not jointly employed by Defendant.[2]

Plaintiff enumerates a brief list of allegations concerning Mr. Dolinger's alleged control over her work. Opp. at 11. These allegations, even if true, are consistent with Dolinger's role as a Government Technical Monitor ("GTM") checking to ensure SOC met its contract obligations. Plaintiff failed to address any other Spirides factors, including the fact that her Amended

---

[2] The contract is properly before the Court on a motion to dismiss because Plaintiff's Amended Complaint refers to it repeatedly. E.g., Amd. Complaint ¶¶ 29, 31, 34, 43, 45. Section G.2 of the contract, "Monitoring of the Contractor," clearly delineates the role of GTMs such as Dolinger. Section G.2 is reprinted here in its entirety:
> As stated in Section E, the CO is ultimately responsible for inspection and acceptance of services under this contract; however, the CO typically delegates these responsibilities to a COR. The COR will review Contractor invoices, including the supporting documentation required by the contract. The COR may provide technical advice, substantive guidance, inspections, invoice approval, and other purposes [sic] deemed necessary under the contract Government Technical Monitors (GTM). Government Technical Monitors maybe [sic] appointed by the Contractor Officer. GTMs are authorized to perform day-to-day inspections and monitoring of the Contractor's work as designated; monitor compliance with U.S. and foreign law, regulations, contract provisions, directives, standards, and policies; and serve as the DS/IP/OPO in-country representative for contract related issues and operations.

Complaint alleges multiple times that her supervisor was SOC employee Kyle Lindsay and that the majority of her allegations involve SOC personnel.  Def. MTD at 2-3.

Plaintiff misstates the law in asserting that she need only make the "feather-light" showing "that State had *any control* over the employment relationship," Opp. at 13 (italics in original), because it is obvious that all agencies have some control over the work performed when they engage a government contractor to provide services.  Plaintiff's reliance on Harris v. Medical Transportation Management., Inc., 300 F. Supp. 3d 234 (D.D.C. 2018) and other Fair Labor Standards Act ("FLSA") cases is misplaced.  The Court in Harris notes that the FLSA's definition of "employer" is expansive and the "D.C. Circuit has not specified a test for determining whether an alleged employer is a 'joint employer' for purposes of the FLSA."  Id. at 240 (emphasis added).[3]  However, in Title VII cases, the D.C. Circuit has refined and simplified the method by which courts in this Circuit must evaluate the relationship between a putative employer and employee.  Miles v. Howard Univ., 83 F. Supp. 3d 105, 113-14 (D.D.C. 2015), aff'd, 653 F. App'x 3 (D.C. Cir. 2016) (finding defendant not to be a joint employer) (citing Redd v. Summers, 232 F.3d 933, 938 (D.C. Cir. 2000) (tour guide assigned to Bureau of Engraving and Printing by personnel corporation was not Bureau's employee for purposes of Rehabilitation Act)).

In both Palmer and Mason, the Court applied Spirides and granted a motion to dismiss. When Plaintiff asserts that her "actual admission that she was employed by SOC is not determinative of her relationship with State," she ignores the fact that one of the important

---

[3] Plaintiff's brief also digressed into a long discussion of "independent contractor" versus "agent," citing more FLSA cases, a criminal case involving the discharge of fuel oil into the Potomac, United States v. Georgetown Univ., 331 F. Supp. 69 (D.D.C. 1971), the relevance of which is unclear, and Jennings v. United States, 530 F. Supp. 40, 43 (D.D.C. 1981), which is not a joint employment case.

Spirides factors is the intent of the parties. By in effect confessing that she did not even realize that she was allegedly "jointly employed" by State, Plaintiff makes clear that the "intent" factor weighs heavily against her, as do the majority of the other factors. See Def. MTD at 12-17; see also Griffin v. Sec'y of Health & Human Servs., No. 13-280V, 2014 WL 1653427 at *1 (Fed. Cl. Apr. 4, 2014), aff'd, 602 F. App'x 528 (Fed. Cir. 2015) (in a Vaccine Act case, "[a]n analysis of the contract belies any representation by petitioner that it was his belief that the government was his employer; most of the aspects of his employment were controlled by Fluor, not the Department of Defense").

Plaintiff cannot meet the standard because she was clearly a contract employee under SOC's chain of command and dismissal is appropriate. See Mason v. African Dev. Found., 355 F. Supp. 2d 85, 98 (D.D.C. 2004) (applying Spirides and holding that plaintiff's non-receipt of retirement benefits and health insurance from federal agency were important factors weighing against employment relationship; dismissing for lack of subject-matter jurisdiction).

**III.    Plaintiff's Tort Claim Must be Dismissed.**

A.    Plaintiff ignores Defendant's argument that Title VII bars tort claims against the government for claims of workplace discrimination, see generally Brown v. Gen. Servs. Admin., 425 U.S. 820, 828-29 (1976). The Court should treat this argument as conceded. Plaintiff's tort claims are properly dismissed because they are not in essence tort claims but are better characterized as employment discrimination claims.

B.    In her opposition brief, Plaintiff asserts a new and meritless theory, that "Sargent has properly pled that State intentionally filed a false report with government authorities, the basis of her tort claim." Opp. at 17. What Plaintiff had actually alleged was:

> Defendants, with malicious purpose and wanton disregard of Sargent's emotions, issued or caused to be issued a Loss of Confidence letter to Sargent— effectively ending her

> career as a U.S. Government contractor— in retaliation for Sargent's protected complaints of severe sexual harassment.

Amd. Compl. ¶ 201 (Count IV).  Count IV, designated as "Intentional Infliction of Emotional Distress" ("IIED"), is effectively a claim of retaliation for protected activity under Title VII, and Title VII would be the exclusive remedy.  Def. MTD at 17.

Moreover, the cases Plaintiff cites for the proposition that "filing a false report with government authorities" constitutes IIED are not at all on point. Those cases all involve false reports by employers to local government authorities, not a (true) report by a government agency (State Department) to an employer (SOC).  None of those cases involve claims against the U.S. Government, because such claims would be barred under the FTCA.

As Plaintiff points out, "the Federal Tort Claims Act provides that the United States shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but it also sets up several exceptions and hence does not apply to (inter alia) claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, <u>abuse of process</u>, libel, slander, misrepresentation, deceit, or <u>interference with contract rights</u>. 28 U.S.C.A. § 2680 et seq." Opp. at 17 (emphasis added).

Plaintiff is attempting to recast her "IIED" theory from what was essentially a <u>tortious interference</u> claim to what now appears to be an <u>abuse of process</u> claim.  Again, the Court should view this claim for its substance (tortious interference or abuse of process), rather than the title Plaintiff attaches to it – IIED.  See <u>United States v. Neustadt</u>, 366 U.S. 696, 704 (1961).  Because the alleged conduct constitutes a tort listed in § 2680, then this Court has no jurisdiction to hear the claim of alleged intentional infliction of emotional distress.  <u>Koch v. United States</u>, 209 F. Supp. 2d 89, 94 (D.D.C. 2002), <u>aff'd</u>, 2002 WL 31926832 (D.C. Cir. 2002).  Thus, Plaintiff's claim is barred under the exceptions to the FTCA.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests dismissal of the Plaintiff's Amended Complaint against the State Department in its entirety with prejudice.

November 12, 2019

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

 /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW, Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendant*