# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TRACY S. SARGENT,

               Plaintiff,

        v.

MICHAEL R. POMPEO,
SECRETARY OF STATE,
UNITED STATES DEPARTMENT OF STATE,

and

SOC LLC

             Defendants.

Civil Action No. 1:19-CV-00620-CJN

## DEFENDANT SOC LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Joon Hwang
LITTLER MENDELSON, P.C.
1650 Tysons Blvd., Suite 700
Tysons Corner, VA 22102
Telephone:    703.442.8425
Facsimile:    703.442.8428
JHwang@littler.com

Kimberly J. Gost
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Telephone:    267.402.3007
Facsimile:    267.402.3131
KGost@littler.com

*Counsel for SOC LLC*

## TABLE OF CONTENTS

**Page**

I.     **FACTUAL AND PROCEDURAL BACKGROUND** ..................................................... 1

     A.    Plaintiff Works At The Baghdad Embassy Complex For Approximately Two Months In 2017 ............................................................................................. 1

     B.    After The State Department Issues Her A Loss Of Confidence Letter And Her Employment Is Terminated, Plaintiff Pursues Title VII Relief Against Both Defendants ............................................................................................... 2

     C.    Plaintiff Now Seeks To Add A New Claim Under The 2013 National Defense Authorization Act Based On Her Internal Sexual Harassment Complaints, Even Though The State Department Declined To Pursue Such Claims On June 11, 2018 ...................................................................................... 3

II.    **LEGAL STANDARD** ....................................................................................................... 4

III.   **LEGAL ARGUMENT** ....................................................................................................... 5

     A.    Plaintiff's Proposed NDAA Claim Is Barred By The Statute Of Limitations Period Applicable To NDAA Claims ................................................. 6

     B.    Plaintiff Has Failed To State A Plausible Claim For Relief Because She Has Not Made An NDAA-Protected Disclosure ................................................. 10

     C.    Leave To Amend Should Also Be Denied Because Of Plaintiff's Undue Delay Or Dilatory Motive In Not Raising An NDAA Retaliation Claim Until June 12, 2020 ...................................................................................... 16

IV.   **CONCLUSION** ................................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Arcanum Grp. Inc.*,
   Civil Action No. 16-CV-1015-MSK-CBS, 2017 U.S. Dist LEXIS 156346 (D.
   Colo. Sept. 25, 2017) ........................................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................1, 5

*Atlas Works, LLC v. Barr*,
   391 F. Supp. 3d 6 (D.D.C. 2019) ........................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5, 13

*Brown v. Jacobs Tech., Inc.*,
   Civil Action No. ELH-18-2516, 2019 U.S. Dist. LEXIS 116226 (D. Md. July
   12, 2019) ...............................................................................................................................6

*Craine v. NSF*,
   687 F. App'x 682 (10th Cir. 2017) ..................................................................................6, 11

*Eberhart v. United States*,
   546 U.S. 12 (2005) (*per curiam*) .......................................................................................8

*Ficarra v. SourceAmerica*,
   Civil Action No. 1:19-cv-01025, 2020 U.S. Dist. LEXIS 57800 (E.D. Va. Apr.
   1, 2020) ....................................................................................................................11, 12, 14, 15

*Foman v. Davis*,
   371 U.S. 178 (1962) ........................................................................................................4, 16

*Fort Bend County v. Davis*.
   587 U.S. ___, 139 S. Ct. 1843 (2019) ..............................................................................8, 9

*Henderson v. Shinseki*,
   562 U.S. 428 (2011) ..............................................................................................................8

*Hooven-Lewis v. Caldera*,
   249 F.3d 259 (4th Cir. 2001) ...............................................................................................5

*James Madison Ltd. v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) .............................................................................................1

*Johnson v. Railway Express Agency, Inc.*,
421 U.S. 454 (1976) ..................................................................................................9

*Jones v. Bernanke*,
557 F.3d 670 (D.C. Cir. 2009) ..................................................................................6

*K.O. v. U.S. Immigration & Customs Enf't*,
Civil Action No.: 20-309 (RC), 2020 U.S. Dist. LEXIS 110134 (D.D.C. June
23, 2020) ....................................................................................................................1

*Mach Mining, LLC v. EEOC*,
575 U.S. ___, 135 S. Ct. 1645 (2015) .....................................................................15

*McCane v. Sch. Dist.*,
Case No. 8:18-cv-1559-T-36AAS, 2020 U.S. Dist. LEXIS 15403 (M.D. Fla.
Jan. 20, 2020) ...........................................................................................................16

*Moldauer v. Constellation Brands, Inc.*,
87 F. Supp. 3d 148 (D.D.C. 2015) .............................................................................1

*Moore v. Univ. of Kan.*,
No. 14-2420-SAC, 2015 U.S. Dist. LEXIS 168938 (D. Kan. Dec. 17, 2015) ..........7

*Myers v. Comm'r*,
928 F.3d 1025 (D.C. Cir. 2019) ................................................................................9

*Omwenga v. United Nations Found.*,
Civil Action No. 15-cv-786, 2019 U.S. Dist. LEXIS 169174 (D.D.C. Sept. 30,
2019) ........................................................................................................................10

*Palacios v. Medstar Health, Inc.*,
298 F. Supp. 3d 87 (D.D.C. 2018) .......................................................................4, 16

*Schwartz v. Urban Compass, Inc.*,
Civil Action No. 1:19-cv-00340 (CJN), 2020 U.S. Dist. LEXIS 68765 (D.D.C.
Apr. 20, 2020) ............................................................................................................4

*Shekoyan v. Sibley Int'l*,
409 F.3d 414 (D.C. Cir. 2005) ................................................................................16

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019) ............................................................................4, 16

*Wang v. Wash. Metro. Area Transit Auth.*,
206 F. Supp. 3d 46 (D.D.C. 2016) ..........................................................................14

*Ward-Johnson v. Glin*,
    Civil Action No. 1:19-cv-00534 (CJN), 2020 U.S. Dist. LEXIS 93129 (D.D.C.
    May 28, 2020) ............................................................................................................4

*Wright v. Common Ground Health Clinic, Inc.*,
    Civil Action No. 16-11623 Section 1, 2016 U.S. Dist. LEXIS 121965 (E.D.
    La. Sept. 9, 2016) .....................................................................................................8

**Statutes**

5 U.S.C. § 1221(e)(1) .....................................................................................................10

31 U.S.C. § 3730(h)(1) ...................................................................................................16

41 U.S.C. § 4712 ....................................................................................................*passim*

*41 U.S.C. § 4712(a)(1) ...........................................................................................*passim*

41 U.S.C. § 4712(a)(2) .....................................................................................................6

41 U.S.C. §§ 4712(b)(1) ................................................................................................7, 9

41 U.S.C. §§ 4712(b)(4) ..............................................................................................7, 15

*41 U.S.C. § 4712(c)(2) .......................................................................................7, 8, 9, 15

41 U.S.C. § 4712(c)(6) ...................................................................................................10

41 U.S.C. § 4712(g)(1) ...................................................................................................15

42 U.S.C. § 2000e-2(a)(1) ..............................................................................................14

42 U.S.C. § 2000e-5(b) .....................................................................................................8

42 U.S.C. § 2000e-5(e)(1) ...........................................................................................8, 15

42 U.S.C. § 2000e-5(f)(1) ............................................................................................8, 15

American Recovery and Reinvestment Act (ARRA), Pub. L. 111-5, 123 Stat. 115
    (2009) ......................................................................................................................14

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ..................*passim*

Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C. § 2409 ......................12

2013 National Defense Authorization Act (NDAA), Pub. L. No. 112-239, 126
    Stat. 1632 (2013) ..............................................................................................*passim*

Pub. L. No. 114-261, 130 Stat. 1362 (2016) ....................................................................6

**Regulations**

29 C.F.R. § 1601.28 ...................................................................................................................8

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................................5, 13

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................5

Fed. R. Civ. P. 12(b)(6) .........................................................................................................1, 5

Fed. R. Civ. P. 15(a) ...........................................................................................................1, 4, 6

LCvR 7(b) ................................................................................................................................1

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
     1388 (3d ed. 2020) ............................................................................................................4

S. Rept. 112-173 (June 4, 2012). ..............................................................................................15

*To Enhance Whistleblower Protector for Contractor and Grantee Employees*, S.
     Rep. No. 114-270 (June 7, 2016) ................................................................................13, 16

Defendant SOC LLC ("SOC"), by and through undersigned counsel, hereby submits this memorandum of points and authorities in opposition to Plaintiff Tracy S. Sargent's ("Plaintiff" or "Ms. Sargent") Motion for Leave to File Second Amended Complaint ("Motion to Amend") (Dkt. 27).

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

SOC recounts only those portions of the operative pleading in this case (the First Amended Complaint ("FAC")) and the proposed Second Amended Complaint ("PSAC") that are necessary to resolve the Motion to Amend.  *See* Dkt. 14 (FAC); Dkt. 27-2 (PSAC).

### A.      Plaintiff Works At The Baghdad Embassy Complex For Approximately Two Months In 2017.

Beginning on July 12, 2017, Plaintiff worked at the Baghdad Embassy Complex ("BEC") in Iraq.  FAC ¶¶ 1, 7, 32.  SOC, which provides security to the BEC pursuant to a contract with the United States Department of State ("State Department"), initially offered Plaintiff a K9 handler position at the job site, which Plaintiff rejected.  *Id.* ¶¶ 9, 29-30.  Nevertheless, SOC reached back out to Plaintiff several months later and "offered her a Kennel Master position, which she accepted."  *Id.* ¶ 30.  SOC also promoted Plaintiff to Operations Kennel Master.  *Id.* ¶ 36.

On or around September 13, 2017, Plaintiff complained to SOC's President and Human Resources Director about what she alleges was a discriminatory and sexually hostile work environment.  *See id.* ¶¶ 106, 133-34, 143; *see also id.* ¶¶ 38-142 (describing alleged workplace

---

[1] "When considering a motion to amend a complaint, the Court evaluates the proposed amended complaint by applying essentially the same standard it would on a motion to dismiss."  *K.O. v. U.S. Immigration & Customs Enf't*, Civil Action No.: 20-309 (RC), 2020 U.S. Dist. LEXIS 110134, at *4 (D.D.C. June 23, 2020) (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).  Accordingly, "[w]hile the [C]ourt must 'assume [the] veracity' of any 'well-pleaded factual allegations' in the [proposed Second Amended Complaint ("PSAC")], conclusory allegations 'are not entitled to the assumption of truth.'"  *Moldauer v. Constellation Brands, Inc.*, 87 F. Supp. 3d 148, 153 (D.D.C. 2015) (quoting *Ashcroft v.* Iqbal, 556 U.S. 662, 679 (2009)).

conduct).  Within 48 hours of receiving this complaint, SOC management offered to remove her

from this work environment in Baghdad.  *Id.* ¶ 144.  Plaintiff accepted this offer and "returned to

the United States on or around September 15, 2017."  *Id.*

> **B.**   **After The State Department Issues Her A Loss Of Confidence Letter And Her Employment Is Terminated, Plaintiff Pursues Title VII Relief Against Both Defendants.**

Subsequently, Plaintiff was informed on or around October 19, 2017, that "the State

Department issued [her] a Loss of Confidence letter" and that her employment was being

terminated.  *Id.* ¶¶ 148-49.  Plaintiff responded by "fil[ing] a timely formal complaint of

discrimination, retaliation, and hostile work environment against the State Department with the

State Department's Equal Employment Office ('EEO') on May 18, 2018."  *Id.* ¶ 16.  The EEO

"notified [Plaintiff] on May 30, 2019 that it was closing her case and provided [her] with a copy

of the report of investigation."  *Id.* ¶ 17.

Plaintiff also "filed a timely charge of discrimination, retaliation, and hostile work

environment" under Title VII of the Civil Rights Act of 1964 ("Title VII") "against SOC with the

U.S. Equal [Employment Opportunity] Commission ('EEOC') on June 12, 2018."  *Id.* ¶ 13.

Exactly one year later, the EEOC issued Plaintiff a right-to-sue notice at her request. *Id.* ¶ 14.

Since first filing suit on March 6, 2019, Plaintiff has raised Title VII claims of sex

discrimination (Count I), hostile work environment (Count II), and retaliation (Count III) against

both SOC and the State Department.  *See* Compl. (Dkt. 1) at Counts I-III*; see also* FAC*.* at Counts

I-III.  Plaintiff also raised an intentional infliction of emotional distress ("IIED") claim against

both Defendants under District of Columbia common law.  *See* Compl. at Count IV; FAC at Count

IV.

On July 22, 2019, Plaintiff filed her First Amended Complaint.  *See* Dkt. 14.  While this

amended pleading added some factual allegations, Plaintiff again raised only Title VII and IIED

claims, against both Defendants.  Plaintiff never mentioned the National Defense Authorization Act of 2013 ("NDAA") or 41 U.S.C. § 4712, nor did her pleading otherwise suggest that she would be pursuing an NDAA claim.  *See generally* FAC.[2]

C.  **Plaintiff Now Seeks To Add A New Claim Under The 2013 National Defense Authorization Act Based On Her Internal Sexual Harassment Complaints, Even Though The State Department Declined To Pursue Such Claims On June 11, 2018.**

In her third attempted pleading, Plaintiff has raised a new ground for relief, asserting a whistleblower retaliation claim under the 2013 National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712.  *See* Dkt. 27-3 (redline version of PSAC) at Count V.  For the first time, Plaintiff contends that her internal discrimination and sexual harassment complaints to SOC management amounted to blowing the whistle on "an abuse of authority relating to a Federal contract or grant" or "a violation of law, rule, or regulation related to a Federal contract" within the meaning of the NDAA, and that she was terminated by SOC in retaliation for these disclosures.  PSAC ¶¶ 211, 213-16, 227, 230-31.

Plaintiff also newly details administrative procedures that occurred back in 2017 and 2018. Specifically, she filed a retaliation complaint with the State Department's Office of Inspector General ("OIG") on November 20, 2017, *i.e.*, roughly a month after her October 2017 termination. *Id.* ¶¶ 23, 167.  She contends that the State Department "responded by letter dated June 11, 2018 that it was declining to pursue [Plaintiff]'s claims under the NDAA[]" and "closed its NDAA investigation."  *Id.* ¶¶ 24, 168.  Plaintiff, however, did not attach the June 11, 2018 letter to her proposed pleading.

In any event, Plaintiff waited more than two years from the State Department's letter to

---

[2]  By contrast, Plaintiff had filed her Title VII claims while the EEOC's investigation was still ongoing, several months before she obtained a right-to-sue notice.  *See* Compl. (Dkt. 1) at ¶ 14 (noting, as of March 6, 2019, that "[t]he EEOC has not issued [Plaintiff] a Notice of Right to Sue").

raise an NDAA claim. Combined with the fact that the allegations Plaintiff raises in her proposed Second Amended Complaint are not cognizable under the NDAA, as analyzed below, the Court should deny her Motion to Amend.

## II.    LEGAL STANDARD

Because Plaintiff has already once amended her pleading, and because SOC opposes her motion,[3] she may now amend "only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2). "Although the '[C]ourt should freely give leave when justice so requires,' Fed. R. Civ. P. 15(a)(2), justice does not *always* require the Court to grant leave to amend." *Ward-Johnson v. Glin*, Civil Action No. 1:19-cv-00534 (CJN), 2020 U.S. Dist. LEXIS 93129, at *12 (D.D.C. May 28, 2020) (emphasis in original). "Leave may be denied in cases involving 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment.'" *Palacios v. Medstar Health, Inc.*, 298 F. Supp. 3d 87, 90 (D.D.C. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And a proposed amendment is futile if "it would not withstand a motion to dismiss." *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019) (internal quotations and citations omitted). Thus, the Court should analyze Count V of the PSAC under the conventional motion-to-dismiss rubric.

Rule 8 of the Federal Rules of Civil Procedure requires that every "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When evaluating a motion to dismiss [under Federal

---

[3] While SOC answered Counts I-IV of the First Amended Complaint (*see* Dkt. 16), its arguments here that Count V would not survive a motion to dismiss are proper. *See, e.g.*, *Schwartz v. Urban Compass, Inc.*, Civil Action No. 1:19-cv-00340 (CJN), 2020 U.S. Dist. LEXIS 68765, at *10 (D.D.C. Apr. 20, 2020) ("'[A] . . . defense that becomes available because of new matter in the [proposed second] amended complaint may be asserted by motion.'") (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed. 2020)).

Rule of Civil Procedure 12(b)(6)], the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (internal quotations and citations omitted).  Still, the allegations must be *factual* and "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To that end, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554-55 (internal quotations and citations omitted).  At bottom, the pleading must "nudge[ the] claim[] across the line from conceivable to plausible." *Id.* at 570.  Therefore, if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

## III.   LEGAL ARGUMENT

Count V of Plaintiff's proposed Second Amended Complaint involves allegations under 41 U.S.C. § 4712, which was enacted as Section 828 of the 2013 National Defense Authorization Act (NDAA), Pub. L. No. 112-239, 126 Stat. 1632 (2013).[4]  Section 828 of the NDAA "[was] signed into law on January 2, 2013, and established a four-year pilot program to expand whistleblower protections for employees of all contractors and subcontractors of federal executive agencies." *Brown v. Jacobs Tech., Inc.*, Civil Action No. ELH-18-2516, 2019 U.S. Dist. LEXIS 116226, at *14-15 (D. Md. July 12, 2019).  "On December 14, 2016, Congress permanently extended the pilot program." *Id.* at *15 (citing Pub. L. No. 114-261, 130 Stat. 1362 (2016)).

---

[4]  Plaintiff's citation to *Hooven-Lewis v. Caldera*, 249 F.3d 259, 276 (4th Cir. 2001), *see* PSAC ¶ 210, is baffling, given that 41 U.S.C. § 4712 did not even come into existence until 12 years after the Fourth Circuit decided that case.

The NDAA states, in pertinent part:

> An employee of a contractor, subcontractor, grantee, or subgrantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1).

> "The persons or bodies to whom a protected disclosure must be made are:
>
> (A) A Member of Congress or a representative of a committee of Congress[;]
> (B) An Inspector General[;]
> (C) The Government Accountability Office[;]
> (D) A Federal employee responsible for contract or grant oversight or management at the relevant agency[;]
> (E) An authorized official of the Department of Justice or other law enforcement agency[;]
> (F) A Court or grand jury[; or]
> (G) A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discovery, or address misconduct."

*Craine v. NSF*, 687 F. App'x 682, 685-86 (10th Cir. 2017) (quoting 41 U.S.C. § 4712(a)(2)).

### A.    Plaintiff's Proposed NDAA Claim Is Barred By The Statute Of Limitations Period Applicable To NDAA Claims.

"Although Federal Rule of Civil Procedure 15(a) permits amendments to the pleadings 'when justice so requires,' an amendment adding a new ground for relief to the complaint must contend with the applicable statute of limitations." *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009) (citation omitted). Because Plaintiff's proposed NDAA claim was not brought within the applicable two-year statute of limitations, amendment would be futile.

A plaintiff seeking to file an NDAA claim must first exhaust her administrative remedies. To begin, a contractor employee who "believes that [she] has been subjected to a reprisal

prohibited by subsection (a) [§ 4712(a)] may submit a complaint to the Inspector General of the executive agency involved[]" within "three years after the date on which the alleged reprisal took place." 41 U.S.C. §§ 4712(b)(1), (4). Upon receiving a complaint, the relevant Inspector General has 180 days to "investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person [*i.e.*, the complainant], the contractor or grantee concerned, and the head of the agency." *Id.* §§ 4712(b)(1), (2)(A). The head of the agency then has 30 days to "determine whether there is sufficient basis to conclude that the contractor or grantee . . . has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief" or remedy the reprisal. *Id.* § 4712(c)(1).

Subsection (c)(2), which is titled "Exhaustion of remedies," explains what happens next:

> **(2) Exhaustion of remedies.** - If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), . . . , and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States which shall have jurisdiction over such an action without regard to the amount in controversy. **An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.**

41 U.S.C. § 4712(c)(2) (emphasis added). In other words, as a matter of law, a plaintiff must bring suit within two years after the earlier of: (1) the agency denying relief or (2) 210 days passing from the date the plaintiff raises a complaint, without resolution. Plaintiff failed to do so in this case, so her claim is time-barred and would not survive a motion to dismiss. *See Moore v. Univ. of Kan.*, No. 14-2420-SAC, 2015 U.S. Dist. LEXIS 168938, at *4-10 (D. Kan. Dec. 17, 2015) (dismissing § 4712 claim for failure to exhaust remedies under § 4712(c)(2)); *accord Wright v. Common Ground Health Clinic, Inc.*, Civil Action No. 16-11623 Section 1, 2016 U.S. Dist. LEXIS 121965,

at *7-13 (E.D. La. Sept. 9, 2016) (same).

The Supreme Court recently analyzed the consequences of failing to comply with an administrative exhaustion scheme in the analogous context of Title VII's charge-filing requirement in *Fort Bend County v. Davis*.  587 U.S. ___, 139 S. Ct. 1843 (2019).  Title VII first requires employees to file a charge of discrimination within either 180 or 300 days "'after the alleged unlawful employment practice occur[s].'"  139 S. Ct. at 1846 (quoting 42 U.S.C. §§ 2000e-5(b), (e)(1)).  "Upon receiving a charge, the EEOC notifies the employer and investigates the allegations."  *Id.* at 1846-47 (citing 42 U.S.C. § 2000e-5(b)).  Where the agency "determines there is 'n[o] reasonable cause to believe that the charge is true,' [it] is to dismiss the charge and notify the complainant of his or her right to sue in court."  *Id.* at 1847 (citing 42 U.S.C. §§ 2000e-5(b), (f)(1), and 29 C.F.R. § 1601.28).  And "[w]hether or not the EEOC acts on the charge, a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed[,]" and the complainant has "90 days following such notice" to file a civil action against the employer.  *Id.* at 1847 (citing 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1601.28).

The Supreme Court unanimously concluded that while the charge-filing provisions are not jurisdictional requirements, they are "mandatory claim-processing rule[s]" that "'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'"  *Id.* at 1849, 1851 (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).  To foster this orderliness, the Court added, courts "*must* enforce" these mandatory rules "if a party 'properly raise[s]'" them.  *Id.* at 1849 (emphasis added) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*).

The same result obtains here.  Much like Title VII's administrative scheme – a scheme that Plaintiff has availed herself of in this case – the NDAA's administrative scheme also "'speak[s]

to . . . a party's procedural obligations'" by "requir[ing] complainants to submit information to the [Inspector General] and to wait a specified period before commencing a civil action" as "prerequisites to suit." *Fort Bend Cty.*, 139 S. Ct. at 1849, 1851 (citation omitted); *see* 41 U.S.C. §§ 4712(b)(1), (4), (c)(2). "[T]he length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1976); *see also Myers v. Comm'r*, 928 F.3d 1025, 1034 (D.C. Cir. 2019) ("'[T]he Court has clarified that it would leave the ball in Congress' court[.]'") (quoting *Fort Bend Cty.*, 139 S. Ct. at 1850). Accordingly, the two-year limitations period in § 4712(c)(2) is a mandatory claim-processing rule.

Plaintiff failed to comply with this mandatory rule with regard to her proposed Second Amended Complaint. She is "deemed to have exhausted her administrative remedies" under § 4712(c)(2) on June 11, 2018, when the State Department dismissed her complaint and denied her relief by issuing its letter "clos[ing] its NDAA investigation." PSAC ¶¶ 24, 168; *see* 41 U.S.C. § 4712(c)(2). Yet, she waited until June 12, 2020 before seeking to raise an NDAA claim in this Court. *See* Dkt. 27. Because the two-year limitations period speaks in mandatory terms, in that "[a]n action . . . may *not* be brought after the date on which remedies are deemed to have been exhausted," 41 U.S.C. § 4712(c)(2) (emphasis added), the Court "'must enforce [this] rule.'" *Fort Bend Cty.*, 139 S. Ct. at 1848-49 (citation omitted). Accordingly, because Count V is futile on limitations grounds, the Court should deny leave to amend.

### B. Plaintiff Has Failed To State A Plausible Claim For Relief Because She Has Not Made An NDAA-Protected Disclosure.

Regardless of whether the Court views Count V as timely filed, it would not survive a motion to dismiss because it fails to state a valid claim. The merits of NDAA retaliation claims

are governed by the same standard applicable to federal reprisal cases before the Merit Systems

Protections Board.  *See* 41 U.S.C. § 4712(c)(6) (adopting the "legal burdens of proof" under 5

U.S.C. § 1221(e)(1)).  Thus, as this Court has explained, "[t]o establish retaliation under § 4712, a

plaintiff must show 'that (1) she was an employee of a government contractor, (2) she disclosed

information that she reasonably believed was evidence of a rule violation related to a federal

contract to the required person, and (3) her disclosure was a contributing factor in the action taken

against her.'"  *Omwenga v. United Nations Found.*, Civil Action No. 15-cv-786, 2019 U.S. Dist.

LEXIS 169174, at \*35 (D.D.C. Sept. 30, 2019) (quoting *Armstrong v. Arcanum Grp. Inc.*, Civil

Action No. 16-CV-1015-MSK-CBS, 2017 U.S. Dist LEXIS 156346, at \*16 (D. Colo. Sept. 25,

2017)).  Here, Plaintiff has failed to plead sufficient facts to satisfy the second element.

In her proposed amendment, Plaintiff contends that she "reasonably believed" her internal

reporting of workplace sexual harassment and discrimination amounted to disclosing "violations

of a law, rule, or regulation related to a [F]ederal contract" (PSAC ¶¶ 210-11, 213-16, 218) and/or

"an abuse of authority relating to a Federal contract or grant" (PSAC ¶ 230) within the meaning of

§ 4712(a)(1).  Objectively, however, none of these alleged disclosures cited in the proposed

amendment are "related to a federal contract."

Again, the NDAA states, in pertinent part:

> An employee of a contractor . . . may not be discharged, demoted, or
> otherwise discriminated against as a reprisal for disclosing to a person or
> body described in paragraph (2) information that the employee reasonably
> believes is evidence of gross mismanagement of a Federal contract or
> grant, a gross waste of Federal funds, an abuse of authority relating to a
> Federal contract or grant, a substantial and specific danger to public health
> or safety, or a violation of law, rule, or regulation related to a Federal
> contract (including the competition for or negotiation of a contract) or
> grant.

41 U.S.C. § 4712(a)(1).

As used in § 4712, "the term 'reasonable belief' . . . includes 'both a subjective and an

objective component,' which means 'an employee must actually believe in the unlawfulness of the employer's actions and that belief must be objectively reasonable.'" *Craine*, 687 F. App'x at 691. Regardless of Plaintiff's own beliefs, no objectively reasonable person would conclude that individual misconduct amounts to legal violations or abuse of authority "related to a Federal contract."

Indeed, the United States District Court for the Eastern District of Virginia's recent decision in *Ficarra v. SourceAmerica*, Civil Action No. 1:19-cv-01025, 2020 U.S. Dist. LEXIS 57800 (E.D. Va. Apr. 1, 2020), compellingly illustrates why Plaintiff's amendment is futile. In *Ficarra*, the plaintiff worked for several years as a commercial sales representative for SourceAmerica on its various contracts with the Department of Defense, which contracts were facilitated by the United States AbilityOne Commission. 2020 U.S. Dist. LEXIS 57800, at *2-5. He then began working as part of a sales team for a new SourceAmerica business segment that was established to win bids for non-governmental commercial contracts. *See id.* at *5. Subsequently, he allegedly made several complaints to his superiors about his concerns that his employer was underreporting the profits it earned on non-governmental commercial contracts. *Id.* at *5-6. After being terminated, he filed an NDAA retaliation claim against his former employer, contending that he "reasonably believed that his disclosure was . . . evidence of 'a violation of law, rule or regulation related to a Federal contract.'" *See id.* at *8-10 (quoting 41 U.S.C. § 4712(a)(1)).[5]

Concluding that none of the alleged complaints "fall within the statutorily-specified

---

[5]    The plaintiff in *Ficarra* also raised a retaliation claim under the Defense Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C. § 2409. 2020 U.S. Dist. LEXIS 57800, at *7-8. The DCWPA was amended at the same time the NDAA was enacted in 2013, and the two statutes are "essentially quite similar in certain respects." *Id.*

disclosures that warrant protection under . . . § 4712[,]" the Court granted the employer's motion to dismiss. *Id.* at *1. "[E]ven assuming plaintiff's disclosure concerns 'a violation of law, rule, or regulation,'" the Court reasoned, "his disclosure is not 'related to' a . . . federal contract, nor could plaintiff have reasonably believed that it was." *Id.* at *10. To reach this conclusion, the Court explained that whether a disclosure is covered "turns on the meaning of the phrase 'related to' as used in . . . § 4712." *Id.* at *11. Looking to the plain meaning of "related to" – namely, "an association or connection between two or more things" – the Court cogently explained that "the 'related to' language in . . . § 4712 requires an actual nexus between a plaintiff's disclosure and a . . . federal contract" for the disclosure to be actionable. *Id.* at *11 & n.2 (collecting dictionary definitions of "related to"). The Court further concluded that the interpretive canon construing statutes as a whole supported this outcome:

> [T]he other types of disclosures explicitly protected within the same provision of § 4712—gross mismanagement of a federal contract and a gross waste of federal funds—underscore the importance of a significant connection between the protected disclosure and a federal contract. Because the other protected disclosures in § 4712 must explicitly involve federal contracts, it follows that **the "related to" language in § 4712 . . . requires that there be an actual nexus between the employee's disclosure and a federal contract for the disclosure to be protected under the statute[.]**

*Id.* at *12 (emphasis added). Consequently, because there was "no association or connection between a federal government contract and [Mr. Ficarra's] disclosure involving the profits earned from a non-governmental commercial contract," he had pleaded an insufficient nexus to plausibly allege a disclosure protected under § 4712, and his NDAA retaliation claim was dismissed. *See id.* at *11-14.

This nexus requirement is further supported by the legislative history of § 4712. "As the Senate Committee on Homeland Security and Governmental Affairs explained, '[a] private individual blowing the whistle on conduct occurring in relation to a private company . . . must seek

the protection of other laws that apply to private citizens.'"  *Id.* at *12 n.5 (quoting *To Enhance Whistleblower Protector for Contractor and Grantee Employees*, S. Rep. No. 114-270, at 12 (June 7, 2016)).

The same reasoning compels the conclusion that Ms. Sargent has failed to state an NDAA retaliation claim in this case.  The vast majority of Plaintiff's allegations repeatedly assert that she made "numerous disclosures" that she reasonably believed showed SOC's purported "violations of a law, rule, or regulation related to a federal contract" or, alternatively, its "'abuse of authority relating to a Federal contract or grant.'"  PSAC ¶¶ 211, 214-16, 230.  But Plaintiff is obligated to provide "more than labels and conclusions" to satisfy Rule 8 of the Federal Rules of Civil Procedure, and these conclusory allegations which merely parrot the text of the NDAA are precisely the type of "formulaic recitation of the elements" that "will not do."  *Twombly*, 550 U.S. at 554-55.

Likewise, Plaintiff asserts, in conclusory fashion, that she "warned the President of SOC and its Human Resources staff that SOC's actions on the WPS contract were illegal, which in turn makes any claims for payment on such a contract a fraud on the taxpayer, based on false certifications that go with such claims for payments."  PSAC ¶ 212.  This is far too attenuated to allege an actual nexus between her disclosure and any "gross mismanagement" or "gross waste of Federal funds" within the meaning of § 4712(a)(1).  To conclude otherwise would "stretch[] . . . § 4712 far beyond the plain language of [that statute] and thus far beyond what the drafters of [that statute] could have reasonably intended[,]" because it would "sweep within the ambit" of § 4712 virtually every disclosure about a company's actions, "even though [they do] not have any connection to any federal contract."  *Ficarra*, 2020 U.S. Dist. LEXIS 57800, at *10-11.

The only "law, rule or regulation" that Plaintiff even attempts to link to the complaints to

her superiors is Title VII, when she alleges that "SOC's actions together with certain government employees to sexually harass women employees and contractors of SOC was *in violation of Title VII* which prohibits discrimination and sexual harassment on account of sex."   PSAC ¶ 227 (emphasis added).  But Title VII does not "relate[] to a federal contract" or government contractors at all; it covers all employers with 15 or more employees – not just those "related to" government contracts. *See* 42 U.S.C. §§ 2000e(b) (defining "employer"), 2000e-2(a)(1).  Whatever can be said of the sexual harassment and discrimination concerns Plaintiff raised to SOC management and Human Resources, they have nothing to do with her Kennel Master responsibilities as part of SOC's performance of security services at the BEC pursuant to its State Department contract.  *See* FAC ¶¶ 9, 30, 33; *cf. Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 91-93 (D.D.C. 2016) (observing, in the context of the nearly identical Section 1553 of the American Recovery and Reinvestment Act (ARRA), Pub. L. 111-5, 123 Stat. 115, 297 (2009), that "whistleblower protection is not meant to allow employees to litigate policy disputes with their employers" and dismissing retaliation claim because employee's complaints were not "disclosures that the ARRA's whistleblower provision protects").

Plaintiff's allegations also do not present facts about "abuse of authority *relating to a Federal contract*."  41 U.S.C. § 4712(a)(1) (emphasis added).  The NDAA specifically defines "[a]buse of authority" as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency."  41 U.S.C. § 4712(g)(1).  Thus, much like the other types of unlawful conduct about which NDAA-protected disclosures may be made (*i.e.*, gross mismanagement or waste of Federal funds), not all abuses of authority are covered under the NDAA; instead, to be cognizable here, the alleged abuse must have a direct nexus to the State Department's mission or the

performance of the BEC security contract.  *See Ficarra*, 2020 U.S. Dist. LEXIS 57800, at *11-14. Plaintiff offers no such nexus, so her proposed amendment would not survive a motion to dismiss.

Moreover, Title VII has its own "detailed, multi-step procedure through which the [EEOC] enforces the statute's prohibition on employment discrimination."  *Mach Mining, LLC v. EEOC*, 575 U.S. ___, 135 S. Ct. 1645, 1649 (2015).  As discussed above, part of this "detailed, multi-step procedure" is that an employee must file a charge of discrimination within 180 or 300 *days* of an unlawful employment practice and then file suit within 90 *days* of receiving a right-to-sue notice from the EEOC.  42 U.S.C. §§ 2000e-5(e)(1), (f)(1).  By contrast, 41 U.S.C. § 4712 gives employees "three *years* after the date on which the alleged reprisal took place" to file a complaint with the Inspector General, and an additional "two *years* after the date on which remedies are deemed to have been exhausted" to file suit.  41 U.S.C. §§ 4712(b)(4), (c)(2) (emphasis added).  It would make little sense to conclude that Congress unwittingly elevated government contractor employees who claim they experienced on-the-job sexual harassment above employees in every other industry by providing *more than four times* as long to file suit as employees in any other industry, particularly without even a hint of any suggestion that Congress intended to do so.[6]

Furthermore, denying leave to amend here is consistent with the NDAA's legislative history.  Title VII is precisely the type of "other law[] that appl[ies] to private citizens" which Congress encouraged plaintiffs to pursue relief under for this type of conduct.  S. Rep. No. 114-270, at 12.  Indeed, Plaintiff has already availed herself of Title VII's remedial scheme in this case (*see* FAC at Counts I-III).  As a result, the Court should not countenance Plaintiff's attempted end-

---

[6]  To the contrary, the Senate Armed Services Committee's stated intent when enacting the pertinent sections of the NDAA was to standardize protections for government contractor employees by "correct[ing] . . . shortcomings in the existing law" – not to confer "most favored nation" status upon them.  S. Rept. 112-173, at 146 (June 4, 2012).

run around Title VII to the NDAA.  *See McCane v. Sch. Dist.*, Case No. 8:18-cv-1559-T-36AAS,

2020 U.S. Dist. LEXIS 15403, at *12-15 (M.D. Fla. Jan. 20, 2020) (dismissing plaintiff's NDAA

claim in second amended complaint because Plaintiff did nothing more than "state concerns that

[her employer] was not in compliance with the requirements of Title I [of her employer's

educational regulations]"); *cf. Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019)

("Dissatisfaction with one's treatment on the job is not enough[]" to raise a retaliation claim under

the False Claims Act, 31 U.S.C. § 3730(h)(1)) (citing *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423

(D.C. Cir. 2005)).  As paragraph 227 of her proposed amendment suggests, Plaintiff's claims are

properly classified as Title VII claims – as they have exclusively been since this case was filed 15

months ago – and the Court should deny leave to inject an NDAA claim for the same conduct.

   **C.     Leave To Amend Should Also Be Denied Because Of Plaintiff's Undue Delay
           Or Dilatory Motive In Not Raising An NDAA Retaliation Claim Until June 12,
           2020.**

   Leave to amend should also be denied where there has been "undue delay . . . or dilatory

motive on the part of the movant[.]"  *Palacios v. Medstar Health, Inc.*, 298 F. Supp. 3d 87, 90

(D.D.C. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  There is significant evidence

that Plaintiff acted with undue delay or, alternatively, dilatory motive by waiting until June 12,

2020 to first surface her NDAA allegations.  Indeed, *every allegation upon which her NDAA claim

relies* (her November 20, 2017 complaint to the State Department OIG; the State Department's

June 11, 2018 response to that complaint; her May 18, 2018 complaint to the State Department's

Equal Employment Office (EEO); and the EEO's closing her complaint on May 30, 2019) *was

known to Plaintiff at the time she filed her First Amended Complaint in July 2019.*  PSAC ¶¶ 16-

17, 23-24, 167-68.  Yet, Plaintiff conspicuously omitted any mention of the NDAA from that First

Amended Complaint, just as she had done in her initial pleading.  And Plaintiff's Motion to Amend

does not articulate any basis to suggest that any of these allegations were the result of newly

discovered evidence, nor does she even attempt to explain why she delayed raising these claims during the more than 15 months that this suit has been pending (or the more than 10 months that have passed since her first amendment). *See generally* Dkt. 27. Accordingly, the Court should deny leave to amend.

## IV. CONCLUSION

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to File Second Amended Complaint and order such other relief as the Court deems just and proper.

Dated:  July 1, 2020.                              Respectfully submitted,

/s/ Joon Hwang
Joon Hwang (D.C. Bar No. 1005117)
LITTLER MENDELSON, P.C.
1650 Tysons Blvd., Suite 700
Tysons Corner, VA 22102
Telephone:      703.442.8425
Facsimile:       703.442.8428
JHwang@littler.com

Kimberly J. Gost (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Telephone:      267.402.3007
Facsimile:       267.402.3131
KGost@littler.com

*Counsel for SOC LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 1, 2020, a copy of the foregoing **DEFENDANT SOC LCC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

R. Scott Oswald (D.C. Bar No. 458859)
Adam Augustine Carter (D.C. Bar No. 437381)
The Employment Law Group, P.C.
888 17th Street, N.W., 9th Floor
Washington, D.C. 20006
(202) 261-2803 (phone)
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com

*Counsel for Plaintiff Tracy Sargent*

Alan Burch (D.C. Bar No. 470655)
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2550
alan.burch@usdoj.gov

*Counsel for Michael R. Pompeo*

/s/ Joon Hwang
Joon Hwang (D.C. Bar No. 1005117)
LITTLER MENDELSON, P.C.
1650 Tysons Blvd., Suite 700
Tysons Corner, VA 22102
Telephone:    703.442.8425
Facsimile:    703.442.8428
JHwang@littler.com

*Counsel for SOC LLC*