UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRACY S. SARGENT,

        *Plaintiff*,

   v.

SOC LLC,

        *Defendant*.

Civil Action No. 1:19-cv-620 (CJN)

**MEMORANDUM OPINION**

After extensive motions practice, plaintiff Tracy Sargent tried before a jury four claims against defendant SOC: (1) Title VII sex discrimination, (2) Title VII retaliation, (3) Title VII hostile work environment, and (4) intentional infliction of emotional distress. *See* ECF No. 181 at 1–2. The jury returned a verdict in favor of Sargent on Count 3, but in favor of SOC on the remaining claims. *See id.* As to the hostile work environment claim, the jury awarded $225,000 in compensatory damages and $1,600,000 in punitive damages. *Id.* at 2–3. The parties have stipulated, however, that Sargent's damages must be "reduced to $300,000 in the aggregate," pursuant to Title VII's statutory damages cap. ECF No. 184 ¶ 1 (citing 42 U.S.C. § 1981a(b)(3)(D)).

Now before the Court are three post-trial motions filed by the parties. The motions are interrelated, but the Court will analyze each in turn before summarizing its overall conclusions.

**I.      Equitable Relief**

When a defendant is found to have engaged in an unlawful employment practice under Title VII, the Court has authority to provide the plaintiff with equitable relief, including back pay.

1

*See Brown v. D.C.*, 768 F. Supp. 2d 94, 100 (D.D.C. 2011) (citing 42 U.S.C. § 2000e–5(g)(1)), *aff'd*, 493 F. App'x 110 (D.C. Cir. 2012). A "trial court has wide discretion to award equitable relief," and "should fashion [its] relief so as to provide a victim of [an unlawful employment practice] the most complete make-whole relief possible." *Id.* (quotation marks omitted). Here, although Sargent initially requested a far-ranging award of both back pay and front pay, she now seeks only "limited" equitable relief. *Compare* ECF No. 185 *with* ECF No. 187 at 3. Specifically, she seeks (1) back pay for the period between leaving Baghdad and being terminated, and (2) "any other injunctive or equitable relief that . . . does not flow from her termination."[1] ECF No. 187 at 2–3.

Ordinarily, "a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award." *Klotzbach-Piper v. Nat'l R.R. Passenger Corp. ("Klotzbach-Piper I")*, 636 F. Supp. 3d 73, 83 (D.D.C. 2022) (quoting *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006)); *see also Brown*, 768 F. Supp 2d at 101. That is because "if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay" typically "is not an issue." *Klotzbach-Piper I*, 636 F. Supp. 3d at 83. Here, of course, Sargent never alleged that she was constructively discharged from her

---

[1] SOC argues that Sargent forfeited her right to seek this relief because she did not squarely request it until her reply brief, where she also conceded that she was not entitled to the non-time-limited front and back pay she initially sought. *See* ECF No. 191 at 3–4 (citing ECF No. 187 at 4). To be sure, "courts generally will not entertain new arguments first raised in a reply brief." *Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 139 n.4 (D.D.C. 2011). But Sargent's request for a limited award of backpay was at least partially encompassed by the arguments in her motion. *See* ECF No. 185 at 8 ("Moreover, Sargent can establish constructive discharge because she requested to leave Baghdad, Iraq *as a result* of the sexually harassing hostile work environment, and as soon as she was home she was without a paying job."). And in any event, SOC was not substantively prejudiced by Sargent's somewhat shifting theory of harm because the Court granted its request for leave to file a surrreply. *See* ECF No. 188; Min. Order of Mar. 20, 2025; *see also* ECF No. 191.

*employment* at SOC; to the contrary, a central aspect of the case was her allegation that she was unlawfully terminated. *See* ECF No. 185 at 7 n.2; ECF No. 183 at 11–12, ¶¶ 44–45. But Sargent did argue, and the evidence at trial demonstrated, that what the jury found was a hostile work environment at SOC forced her to leave her *post in Baghdad*. In particular, on September 14, 2017, Sargent sent a letter to SOC's vice president of human resources, Susan Major, alleging sexually harassing behavior at the Baghdad Embassy complex, expressing fear for her safety, and requesting help leaving Iraq. *Id.* at 129–48; *see also* ECF No. 183 at 11, ¶¶ 31–36. Bonnae Vega, the human resources director who reviewed Sargent's report the same day, testified that, after speaking with Sargent about its contents, she "made sure that [Sargent] left [Baghdad] immediately." ECF No. 195 at 157–59; *see also* ECF No. 183 at 11 ¶¶ 37–38. And it is undisputed that, once Sargent returned home, SOC did not pay her wages. *See* ECF No. 195 at 165.

Sargent thus "made an adequate showing of a causal connection between" what the jury ultimately found to be a hostile work environment and her departure from Baghdad, "such that the latter," which plainly led to lost compensation, can "provide the basis for . . . back pay . . . under Title VII." *Klotzbach-Piper v. Nat'l R.R. Passenger Corp. ("Klotzbach-Piper II")*, 678 F. Supp. 3d 62, 71 (D.D.C. 2023); *see also Brown*, 768 F. Supp. 2d at 104–05 (evidence at trial can support equitable relief for sexual harassment "absent a pleading or jury finding of constructive discharge"). Indeed, SOC does not challenge that causal connection—it simply argues that "SOC did not owe wages to [Sargent] for the time she spent stateside, because it is undisputed that she performed no work for SOC during that time." ECF No. 191 at 5. But that ignores *why* Sargent was stateside. The record and jury verdict together reflect that the reason was a Title VII violation by SOC.

The question then is how much back pay Sargent should receive. The parties agree on the appropriate rate of compensation (although SOC of course objects that any compensation is appropriate), but they disagree on the time period over which the rate should be applied. *See* ECF No. 212. Here, the Court sides with SOC that the proper time frame is the period between Sargent's departure from Baghdad and the effective date of her termination, which the parties concur was October 15, 2017. *See* ECF No. 183 at 11 ¶¶ 43–44; *see also* ECF No. 187 at 2 n.1; ECF No. 191 at 5 n.1. That Sargent may not have *learned of* her termination until October 23, 2017, is irrelevant given that her employment indisputably ended before that and the jury found her termination lawful. The Court therefore finds based on the parties' jointly stipulated calculation that Sargent is entitled to an award of $14,533 in back pay, before any prejudgment interest. ECF No. 212.

As noted, Sargent suggests that, in addition to back pay, the Court could also provide her with other forms of "make-whole relief," such as an order requiring SOC to train its employees and customers on Title VII topics, post Title VII's requirements at its worksites, or "fix[]" Sargent's employment records. ECF No. 187 at 3–4. Even assuming Sargent did not forfeit entitlement to that additional relief by requesting it for the first time only in her reply brief, *see* ECF No. 191 at 4, the Court finds it is not warranted. SOC "no longer has the Worldwide Protective Services Task Order 3 contract with the Department of State . . . in Baghdad," ECF No. 185 at 7, and most of the employees involved in Sargent's case are no longer employed at SOC. The training and posting remedies Sargent proposes thus could not reach the particular work environment and individuals the jury found problematic, and would therefore have very limited "make-whole" effect. And although Sargent does not specify the way in which the Court might

4

"fix" her employment records, it is difficult to imagine any remedy the Court could offer that would not be inconsistent with the jury's verdict, which, again, found her termination lawful.

## II. Fees and Costs

Title VII authorizes the award of costs, including reasonable attorneys' fees, to the prevailing party. *See Castle v. Bentsen*, 872 F. Supp. 1062, 1066 (D.D.C. 1995) (citing 42 U.S.C. § 2000e-5(k)). Here, though, the extent of Sargent's entitlement to fees and costs depends more on Federal Rule of Civil Procedure 68 than on Title VII. Rule 68 provides that, "[a]t least 14 days before the date set for trial, a [defendant] may serve on [a plaintiff] an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). "If the judgment that the [plaintiff] finally obtains is not more favorable than the unaccepted offer, the [plaintiff] must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). For purposes of a Title VII case, Rule 68 "costs" include the plaintiff's attorneys' fees.[2] *See Marek v. Chesny*, 473 U.S. 1, 9 (1985) (explaining that the scope of Rule 68 costs is set by the underlying statute in the case); 42 U.S.C. § 2000e-5(k) (defining "a reasonable attorney's fee (including expert fees) as part of the costs").

On June 26, 2024, seven months before trial, SOC served Sargent with an $800,000 offer of judgment, "inclusive of all damages and penalties sought, pre-judgment interest, and reasonable attorneys' fees and costs incurred to date." ECF No. 203-3 at 1. Sargent rejected the offer by

---

[2] The Court of Appeals has held that, where the plaintiff's total recovery does not exceed the offer of judgment, Rule 68 can also require a plaintiff to pay the *defendant's* post-offer-of-judgment costs. *See Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1193 (D.C. Cir. 1998). But it is not clear that principle extends to an award of a defendant's attorneys' fees in the Title VII context. *See, e.g.*, *Le v. Univ. of Pennsylvania*, 321 F.3d 403, 410–11 (3d Cir. 2003). Regardless, the Court need not address the question here, because SOC has neither detailed its post-offer-of-judgment fees and costs nor specifically requested that Sargent reimburse them. *See generally* ECF No. 203.

5

failing to respond, and her counsel went on to bill 2,289.6 additional hours.[3]  ECF No. 203 at 4–5.  The central question for fee and cost purposes is thus whether Sargent's ultimate monetary award in this case, combined with her recoverable fees and costs before June 26, 2024, exceed $800,000.  If they do not, then, pursuant to Rule 68, Sargent may recover only her pre-offer-of-judgment fees and costs—no more.

### 1. Attorneys' Fees

The Court will begin by assessing Sargent's reasonable attorneys' fees prior to June 26, 2024.  *See Alavi v. Bennett*, 2024 WL 5056204, at *12 (D.D.C. 2024).  Sargent argues, relying on the Fitzpatrick matrix[4] for calculating a reasonable rate under the lodestar approach, that her fees by that date were $537,782.30.  ECF No. 206 at 2; ECF No. 206-4.  But there is no need to *estimate* what Sargent's reasonable attorneys' fees *would have been* if she were not a paying client, as the Fitzpatrick approach is designed to do, because Sargent's counsel "agreed to accept [her] claims on an hourly basis, and Sargent [] paid fees and expenses billed to her in this matter."  ECF No. 190 at 9; *cf. J.T. v. D.C.*, 652 F. Supp. 3d 11, 19 (D.D.C. 2023) (explaining that the lodestar method "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case").  In other words, everyone knows here what counsel "actually charged" Sargent, and that is "presumptively

---

[3] SOC also made a settlement offer of $1.25 million the week before trial, which Sargent again rejected.  *See* ECF No. 203 at 5; ECF No. 203-2 ¶ 5.

[4] "The Fitzpatrick Matrix is a fee matrix based on rates that lawyers charged clients for litigating complex cases in the D.C. District Court as determined from publicly filed fee petitions and resulting court orders."  *Segar v. Garland*, 2024 WL 4332615, at *7 (D.D.C. 2024) (quotation marks and alteration omitted).

6

the reasonable rate."[5] *Baylor v. Mitchell Rubenstein & Assocs.*, P.C., 735 F. App'x 733, 735 (D.C. Cir. 2018) (affirming district court's decision to reduce counsel's requested hourly rate to the rate that was actually charged); *see also Segar v. Garland*, 2024 WL 4332615, at *7 (D.D.C. 2024) (relying on plaintiff's actual rates as opposed to Fitzpatrick rates where Fitzpatrick rates were lower).

That presumption is further bolstered here by the fact that Sargent's pre-offer-of-judgment fees as calculated using her counsel's actual rates—$316,946.50—is in the ballpark of the estimate her counsel provided to SCO of their fees at that time—$400,000. *See* ECF No. 203 at 10; ECF No. 203-7; ECF No. 203-1 ¶ 3c. That unsurprising symmetry indicates the appropriateness of relying on Sargent's true rates: the alternative would substantially prejudice SOC insofar as it calculated its offer of judgment based on Sargent's counsel's January 2024 representations to Magistrate Judge Harvey about the amount that Sargent had actually spent on the case.[6] *See* ECF No. 203-1 ¶ 3c; ECF No. 203-2 ¶ 4; ECF No. 203-4 at 7–8.

To be sure, Sargent argues that relying on the rates she actually paid would prejudice *her*, since she lost the time value of that money and the higher Fitzpatrick rates would help her recoup it. *See* ECF No. 206 at 5–6. But caselaw "condon[ing] the use of current [as opposed to historic] [Fitzpatrick] rates . . . in order to account for a delay in payment," *Alavi*, 2024 WL 5056204, at *15, does not stand for the principle that Fitzpatrick rates are *generally* appropriate when a client

---

[5] Counsel's hourly rate was $490 for partners; $290 for associates; and $165 for law clerks. ECF No. 203-6 at 2, 5. Counsel reserved the right to increase rates by 5% annually, but never did so. *Id.*

[6] Sargent's counsel later asserted to defense counsel during fee litigation that "the $400,000 estimate of our fees at the time of mediation turns out to have been incorrect"—i.e., to have been an underestimate of the total—"because we were not using the 2024 Fitzpatrick rates." ECF No. 203-4 at 6.

7

has "paid her attorneys' fees . . . on an hourly basis." ECF No. 206 at 3. The Court will explain below how the Consumer Price Index addresses the inflation issue. But applying Fitzpatrick rates *in addition to* an inflation adjustment here would confer a windfall in violation of standard fee shifting policy. *See Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C. Cir. 1984). As the Supreme Court has explained, "[t]here is nothing unfair about compensating [] attorneys *at the very rate that they requested.*" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 557 (2010). The same goes for compensating the plaintiffs who opt to pay those requested rates.

Having settled this qualitative rate issue, the Court also finds that several quantitative deductions are warranted from the $316,946.50 in fees that Sargent actually paid prior to receiving SOC's offer of judgment. First, the parties agree that a $9,822.50 deduction is appropriate to account for Sargent's unsuccessful litigation against the State Department.[7] *See* ECF No. 203 at 12; ECF No 206 at 6; *see also* ECF No. 37. Next, SOC argues that various groups of Sargent's billing entries are categorically unrecoverable: entries allegedly pertaining to administrative tasks, internal meetings, and duplicative tasks, as well as allegedly vague entries. *See* ECF No. 203 at 15–17. Beginning with the purported administrative entries, the Court has reviewed them and agrees to some extent with SOC's characterization: they pertain, among related actions, to the downloading of documents, the scheduling of conference calls, and the calendaring of deadlines. *See* ECF No. 203-10. "As a general matter, [those] clerical and administrative services amount to non-billable overhead." *Barton v. U.S. Geological Surv.*, 2019 WL 4750195, at *8 (D.D.C. 2019). But the Court also acknowledges that Sargent "should not be penalized for hiring" a relatively "small law firm[] that do[es] not have the staff or support team of a major law firm," and thus must

---

[7] Sargent proposes a deduction of $15,238, based on 2024 Fitzpatrick rates, but does not dispute that $9,822.50 is the appropriate actual-rate equivalent. *See* ECF No. 206 at 6 & n.4.

8

rely on its law clerks and associates for a wider range of tasks. *Id.* The Court will therefore permit these services to be compensated at a 25% discount, amounting to a $1,775.25 reduction in Sargent's fees.

The Court also partially agrees with SOC's characterization of various entries as vague or excessive. As to the former, the Court notes that a number of counsel's entries are too generic or coded to be meaningful, such as a $725 charge for "Completed revisions to the Litigation Worksheet" and a $145 charge for reviewing and revising an "opinion letter." ECF No. 203-11 at 2, 6. In total, the Court will deduct $1,539 from Sargent's fees for these sorts of entries—less than a third of the deduction that SOC proposed.[8] *See, e.g.*, *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989) (affirming exclusion of billing entries where the descriptions "fail[ed] to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable") (quotation marks omitted).

As to entries for time that SOC alleges was "spent in duplicative, unorganized or otherwise unproductive effort," *Env't Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993), the Court finds that counsel's $70,759 expenditure on internal meetings, many of which included three or four attorneys, was at that early stage in the litigation somewhat excessive. *See generally* ECF No. 203-12. It will thus deduct 25% of those fees, for an additional deduction of $17,689.75. *See, e.g.*, *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 372 (D.D.C. 2025) (reducing fee for internal conferences by two-thirds where plaintiff "failed to justify" the "large fee" of $12,225). And the Court will also deduct 25% of counsel's $18,682 bill for focus group

---

[8] SOC also proposed that the Court exclude the cost of numerous entries that were "cut off mid-sentence." ECF No. 203 at 16. Because it appears that any omissions were merely the product of a technological error, *see* ECF No. 203-11, and plaintiff's counsel offered at oral argument to submit a revised spreadsheet at the Court's request, the Court will not exclude those additional entries.

sessions, *see* ECF No. 203-13, which was somewhat excessive in light of the dual attendance by both principal attorneys assigned to the case. *See, e.g.*, *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 70–71 (D.D.C. 2019) (reducing by 33% counsel's $20,000 bill for attending three status conferences and conferring with opposing counsel, in light of "overstaffing and unnecessary efforts"). That creates another $4,670.50 reduction.

Taking all of the above deductions together, Sargent's attorneys' fees before the offer of judgment total $281,449.50. But the Court must consider whether one final deduction is warranted given that Sargent ultimately prevailed on only one of her four claims. *See* ECF No. 203 at 12–15. The Supreme Court has instructed courts considering results-based reductions to do so in view of "two questions": (1) whether the plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which [s]he succeeded" and (2) whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, there was substantial daylight between the hostile work environment claim on which Sargent prevailed and her two unsuccessful wrongful termination claims. While the former centered on specific episodes of sexual harassment in Baghdad, the latter turned on the actions of SOC and the State Department with respect to the loss of confidence letter that Sargent received, which largely occurred *after* Sargent had left Baghdad.[9] *Cf. Park v. Howard Univ.*, 881 F. Supp. 653, 661 & n.9 (D.D.C. 1995) (hostile work environment and discrimination claims were interrelated where they both rested on allegations that plaintiff had been "systematically stripped . . . of every leadership position at Howard College of Pharmacy"). It thus blinks reality to suggest that the claims grew out of the same "work," or that evidence

---

[9] Sargent's retaliation claim *theorized* a link between the sexual harassment and her termination, but the verdict supports, at a minimum, that the jury rejected that theory. *See* ECF No. 181 at 1; *contra* ECF No. 206 at 8.

10

gathered for the termination claims "was instrumental to Sargent's ability to prevail at trial." ECF No. 190 at 4.

Moreover, even if Sargent's claims *had* been more "interrelated," Sargent's "limited" "degree of success"—the "most critical factor"—would still warrant a fee reduction. *Hensley*, 461 at 436; *see also id.* ("Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill."). The Court in its discretion will reduce Sargent's fees by 25% to account for that principle, which Sargent largely fails to grapple with. *See, e.g.*, *Baylor*, 735 Fed. App'x at 736 (affirming district court's 60% fee reduction "to account for the fact that [the plaintiff] prevailed on only one of her three claims").

In sum, then, Sargent's recoverable attorneys' fees prior to receiving the offer of judgment total $211,087.13.

### 2. Costs

The Court must next consider Sargent's recoverable costs prior to SOC's offer of judgment. Although Sargent estimates their total at $75,210.63, *see* ECF No. 206-5 at 8, not every cost she lists is compensable. *See Noble v. Herrington*, 732 F. Supp. 114, 118–19 (D.D.C. 1989) (citing 28 U.S.C. § 1920). To start, Sargent may not recover the cost of experts who did not "play[] a vital role in the resolution of the case"—namely, the vocational experts who did not testify at trial and whose reports were ultimately irrelevant given that Sargent did not (and could not) request front pay or back pay beyond the limited period during which she remained employed at SOC but was not paid. *Pyramid Lake Paiute Tribe of Indians v. Morton*, 360 F. Supp. 669, 672 (D.D.C. 1973), *rev'd on other grounds,* 499 F.2d 1095 (D.C. Cir. 1974); *see also* ECF No. 203-15; ECF No. 190 at 17. And it is well-established that expenses associated with mock trials, focus groups,

11

jury consultants, and private investigators generally are not compensable absent specific circumstances not present here. *See, e.g.*, *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 71 (D.D.C. 2013) (excluding mock trial expenses); *Jackson v. Estelle Place, LLC*, 2009 WL 1321506, at *3 n.1 (E.D. Va. 2009) (excluding private investigator costs in a case brought by Sargent's counsel), *aff'd*, 391 F. App'x 239 (4th Cir. 2010). The Court will deduct a total of $29,552.70 for all of the above expenses, meaning that Sargent's recoverable costs before June 26, 2024, come to $45,657.93.[10] *See* ECF Nos. 203-15, 203-16, and 203-17 (summaries of deducted expenses).

### 3.     Inflation Adjustment

Based on the above analysis, Sargent's compensable fees and costs before June 26, 2024 total $256,775.06. As noted, though, because Sargent paid her own fees and expenses in this matter, she lost the time value of that money, and thus would not be fully compensated without some form of inflation adjustment. *See* ECF No. 190 at 9; ECF No. 206 at 6; *cf. Brackett v. Mayorkas*, 2023 WL 5094872, at *6 (D.D.C. 2023) (awarding current matrix rates to adjust for inflation).

SOC appears to concede Sargent's entitlement to an inflation adjustment on her fee and cost award—just not one effectuated via the application of current Fitzpatrick rates. *See* ECF No. 203 at 19. And SOC also concedes that the way to apply the adjustment is by entering Sargent's total fees and costs into the United States Bureau of Labor's Consumer Price Index Inflation Calculator using a start date of May 2018—the month counsel started billing Sargent. *See id.* at 19 n. 15. The Court will accordingly follow that approach, notwithstanding that, as SOC flags, it

---

[10] The Court in its discretion will permit Sargent to recover the cost of her trial consultant. *See, e.g.*, *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000). As Sargent notes, "SOC employed a paraprofessional to do the same sorts of tasks [that] Mr. Phaneuf" performed at trial. ECF 206 at 14.

slightly overestimates the impact of inflation since Sargent did not incur all her expenses at that time. *See id.* With this last adjustment, then, Sargent's fees and costs before the offer of judgment come to $330,655.50.

### 4.     Prejudgment Interest

To finally determine whether the offer of judgment exceeds Sargent's total recovery such that it cuts off expenses incurred after June 26, 2024, the Court must assess the extent to which Sargent is entitled to prejudgment interest on her damages award.[11] "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *W. Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). But precisely "[b]ecause prejudgment interest is an element of complete compensation, it should be denied when an award without prejudgment interest fully compensates a plaintiff." *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 60 (D.D.C. 2020) (citations, quotation marks, and alterations omitted). "The determination as to whether a claimant is entitled to prejudgment interest is committed to the sound discretion of the district court . . . ." *Neal v. Dir., D.C. Dep't of Corr.*, 1995 WL 870887, at *1 (D.D.C. 1995).

Sargent's sexual harassment damages award consists of three components. The jury awarded $225,000 in compensatory damages, to remunerate Sargent "for any pain, suffering or mental anguish that [she] experienced as a consequence of SOC's [] unlawful actions." ECF No.

---

[11] SOC argues that Sargent has forfeited her entitlement to prejudgment interest on her damages award because she did not request it in her fee petition or reply brief. *See* ECF No. 209 at 1. Sargent did in fact fail to seek such interest even as late as her reply brief, but both parties addressed the issue during the June 9, 2025 motion hearing, and later submitted supplemental briefing on it at the Court's direction. *See* Min. Entry of June 9, 2025. Moreover, SOC's offer of judgment was expressly "inclusive of . . . pre-judgment interest." ECF No. 203-3 at 1. For all these reasons, the Court will address the issue of prejudgment interest on the merits.

13

181 at 2; ECF No. 183 at 24. The jury also awarded $1.6 million in punitive damages, "to punish [SOC] for its conduct and to serve as an example to prevent others from acting in a similar way." ECF No. 181 at 3; ECF No. 183 at 26. And for the reasons stated above, the Court has determined that Sargent is entitled to $14,533.00 in back pay. The Court therefore must determine whether an award of prejudgment interest is appropriate as to each of those distinct categories of damages.

The question is straightforward with respect to punitive damages. Courts have repeatedly held that "prejudgment interest does not apply to punitive damages because prejudgment interest is an element of complete compensation and punitive damages are non-compensatory." *Akins v. Islamic Republic of Iran*, 549 F. Supp. 3d 104, 122 (D.D.C. 2021) (quotation marks omitted). The Court agrees.

As to compensatory damages, the Court also finds that prejudgment interest is not applicable here, where the jury's award compensated for emotional distress alone. "[C]ourts generally reserve prejudgement interest for backpay awards and similar relief." *Neal*, 1995 WL 870887, at *2. That is because, "unlike a backpay award," a jury's award of emotional distress damages likely already encompasses the plaintiff's whole psychic injury from the time of the harm until the conclusion of the trial. *Percy v. Townsend*, 2024 WL 2846688, at *1–*2 (S.D.N.Y. 2024) (explaining that pain and suffering damages "are not easily calculated, and the jury's award already represents their best quantification of losses that are difficult to quantify"). Indeed, the jury in this case heard evidence about all "the time periods involved" in Sargent's pain and suffering, *id.* at *2, including Sargent's testimony that to this day she "questions everything in her life" and that she will never "get over" "[w]hat happened to her and what SOC has done to her," and the Court instructed the jury to "determine an amount that [was] fair compensation for Ms. Sargent's damages." ECF No. 185 at 6; ECF No. 183 at 24. The Court thus finds prejudgment interest is

not warranted because the jury's award itself "account[s] for [Sargent's] ongoing . . . suffering."[12] *E.E.O.C. v. Everdry Mktg. & Mgmt., Inc.*, 556 F. Supp. 2d 213, 224 (W.D.N.Y. 2008) (jury instruction to "award damages in an amount that would 'fairly and justly' compensate the claimant" meant the jury was "directed to consider . . . any continuing injury"), *aff'd*, 348 F. App'x 677 (2d Cir. 2009).

Sargent is, however, entitled to prejudgment interest on her backpay award—the prototypical case for prejudgment interest in a Title VII suit. *See Loeffler v. Frank*, 486 U.S. 549, 557 (1998) ("Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers."); *see also Neal*, 1995 WL 870887, at *2. The Court will thus adjust Sargent's total award of backpay to $20,570.05, based on Sargent's unchallenged calculation. *See* ECF No. 213 at 2 & n.3.

\*\*\*

When Sargent's money damages—$300,000 in compensatory and punitive damages plus $20,570.05 in back pay—are added to her compensable fees and costs prior to the offer of judgment, the total is $651,225.55. Because that amount is less than the offer of judgment, Sargent may not recover fees and costs postdating June 26, 2024. Her fees and costs are thus capped at $330,655.50.

**III.   Sanctions**

After Sargent filed her initial motion for equitable relief, which sought expansive back and front pay essentially on the theory that she was wrongfully terminated, SOC moved for Rule 11 sanctions on the grounds that the motion was inconsistent with the jury verdict. *See* ECF No. 189

---

[12] Even if the Court had concluded prejudgment interest was appropriate, it is not clear whether Sargent would have been able to recover that interest given Title VII's statutory damages cap. *See, e.g., Lensing v. Potter*, 2013 WL 209604, at *6 (W.D. Mich. 2013) (citing 42 U.S.C. § 1981a(b)(3)(D)).

15

at 5. As discussed, though, Sargent later abandoned that broad request to seek only back pay for the time between her departure from Baghdad and her termination, on a quasi-constructive-discharge theory. And for the reasons above, the Court awarded that limited back pay after concluding that Sargent's narrower request was sufficiently encompassed by her broader request such that it was not forfeited. In short, the Court concluded that Sargent's motion for equitable relief was partially meritorious, meaning the standard for sanctions is not met. *See* Fed. R. Civ. P. 11(b). And in any event, the Court agrees that Sargent's choice to narrow her request for equitable relief after receiving SOC's sanctions threat satisfied Rule 11's safe harbor provision, further shielding counsel. *See* Fed R. Civ. P. 11(c)(2) (requiring "challenged . . . contention" to be "appropriately corrected").

### IV. Conclusion

For the foregoing reasons, the Court will grant in part Sargent's motion for equitable relief, ECF No. 185, by awarding her $20,570.05 in back pay, inclusive of prejudgment interest. The Court will also grant in part Sargent's motion for fees and costs, ECF No. 190, by awarding her a total of $330,655.50 for her attorneys' fees and costs prior to SOC's offer of judgment. Finally, the Court will deny SOC's motion for sanctions, ECF No. 189. An Order will accompany this Opinion.

DATE: September 12, 2025

CARL J. NICHOLS
United States District Judge